1   **KING & SPALDING LLP**
    QUYEN L. TA (SBN 229956)
2     *qta@kslaw.com*
    JEANNE A. FUGATE (SBN 236341)
3     *jfugate@kslaw.com*
    LENNETTE W. LEE (SBN 263023)
4     *llee@kslaw.com*

5   633 West Fifth Street
    Suite 1600
6   Los Angeles, CA  90071
    Telephone:   (213) 443-4355
7   Facsimile:   (213) 443-4310

8   50 California Street
    Suite 3300
9   San Francisco, CA  94111
    Telephone:   (415) 318-1200
10  Facsimile:   (415) 318-1300

11  Attorneys for Plaintiffs
    MOLINA HEALTHCARE, INC.
12  and VINOD MOHAN

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16
    MOLINA HEALTHCARE, INC., a          Case No.   2:23-cv-07417
17  California corporation; and
    VINOD MOHAN, an individual,
18                                      **COMPLAINT**
                  Plaintiffs,
19
            v.
20
    ELEVANCE HEALTH, INC., an           **(Jury Trial Demanded)**
21  Indiana corporation

22                Defendant.

23

24

25

26

27

28

## COMPLAINT

Plaintiffs Molina Healthcare, Inc. ("Molina") and Vinod Mohan ("Ms. Mohan" and, collectively with Molina, "Plaintiffs"), by and through their undersigned counsel, bring this action against Defendant Elevance Health, Inc. ("Elevance") as set forth below.

## PRELIMINARY STATEMENT

1.      In an attempt to circumvent controlling California law, Elevance improperly seeks to prevent its former Medicare executive for the Western Region, Ms. Mohan—a California resident who has lived and worked in California for the last 35 years—from now joining Molina, a California-based company.

2.      Specifically to *avoid* any dispute with Elevance, Ms. Mohan and Molina were intentionally transparent and above-board after Ms. Mohan accepted a position with Molina to serve as its Senior Vice President, Medicare Segment.  Among other efforts, to ensure a smooth transition, on July 17, 2023:

(i)      Ms. Mohan gave notice of her resignation to Elevance, did not access or attempt to access any Elevance materials thereafter, and promptly returned all Elevance equipment and documents in her possession back to Elevance;

(ii)     Molina and Ms. Mohan both informed Elevance that she accepted a position at Molina as Senior Vice President of Medicare and would start that position on August 30, 2023;

(iii)    In a letter from Molina to Elevance's Chief Legal and Human Resources Officer, Blair Todt, sent on Ms. Mohan's behalf and with her authorization, Ms. Mohan expressly exercised her rights under California Labor Code Section 925 and voided the Indiana forum selection and choice-of-law clauses foisted on her by Elevance in her employment contracts, and further advised that the restrictive covenants in the same agreements were in violation of both Section 925 and California Business

1      & Professions Code Section 16600; and

2      (iv)    Molina specifically requested that all communications concerning Ms.

3            Mohan be directed to the attention of Molina's counsel.

4      3.     For five weeks, Elevance provided no response or objection to Ms.

5 Mohan's departure.  Nor did anyone at Elevance, including its Chief Legal Officer (to

6 whom the letter voiding the illegal Indiana forum selection and choice-of-law clauses

7 was addressed), object to Ms. Mohan's request to void these Indiana clauses.  Instead,

8 Ms. Mohan's team and colleagues congratulated her on the new position with Molina

9 and gave her their blessings.  In the most vindictive fashion, Elevance waited for the

10 most opportune moment to create public humiliation for Ms. Mohan and to produce

11 maximum business interruption for Molina, her new employer.  On August 22, 2023,

12 five weeks after Ms. Mohan gave notice and days before she was scheduled to begin

13 at Molina, Elevance preemptively filed a complaint and TRO in the Southern District

14 of Indiana.

15      4.     Elevance scheduled the personal service of Ms. Mohan so that it took

16 place during her son's wedding.  Ms. Mohan and her family are South Asian and as is

17 customary with her culture, weddings are days-long celebrations to allow for various

18 prayers and rituals.  This week-long event was hosted by Ms. Mohan and her husband,

19 the timing of which Elevance was well-aware, given that Ms. Mohan had scheduled

20 for the time off from work many months before as she had anticipated she would still

21 be at Elevance.  Although the process server was asked to return after guests had left,

22 he refused; Ms. Mohan was forced to accept Elevance's court papers in front of family

23 and friends during what should have been a celebratory family event.  Prior to serving

24 Ms. Mohan, Elevance did *not* contact Molina's in-house counsel to determine if

25 Molina would accept service (which it would have), even though that would have

26 been the professionally courteous thing to do.  Indeed, Elevance knew that Molina

27 would have accepted service because in corresponding with Elevance's Chief Legal

28 Officer, Molina made clear that all correspondences related to Ms. Mohan's

employment should be directed to Molina, which strongly suggested that she was represented.

5. Elevance's Indiana filings provide no justification for its conduct. Its Indiana case is based on the speculative (and wholly refuted) allegation that Ms. Mohan *attempted* to print a company document from her home printer in California on the day she gave notice—which is wholly false. Given the weakness of its actual misappropriation claim, Elevance also relies on an "inevitable disclosure" theory of trade secret misappropriation—a theory of liability that is banned under California law as an unreasonable restraint on trade. But notwithstanding the fact that Elevance's Indiana action is baseless, its ongoing attempt to enforce voided and unlawful contractual provisions prevents Ms. Mohan from starting her position at Molina, and prevents Molina from having Ms. Mohan employed as its Senior Vice President of Medicare.

6. Elevance's conduct is hardly surprising. Undoubtedly, Elevance is vexed by the fact that approximately 20 of its executives have left Elevance and chosen to join Molina for better opportunities in the last few years.

7. Elevance's attempt to enforce unlawful contractual provisions against Ms. Mohan is not, however, a permissible way to deal with its employee attrition problem. Molina and Ms. Mohan therefore bring this action seeking a declaratory judgment and injunctive relief determining that several provisions of Ms. Mohan's employment agreements with Elevance—including Indiana choice-of-law and forum selection clauses—are illegal and unenforceable under California law, and that Ms. Mohan properly voided those provisions pursuant to statute. *See* Cal. Lab. Code § 925(a)-(b).

## PARTIES

8. Molina is a California corporation with its principal place of business located in Long Beach, California.

9. Ms. Mohan is an individual and a citizen of California. She has been a

1  resident in California for over thirty-five years.

2      10.    Elevance is an Indiana corporation with its principal place of business

3  located in Indianapolis, Indiana.

4                          **JURISDICTION AND VENUE**

5      11.    This Court has subject matter jurisdiction over this action pursuant to

6  28 U.S.C. Section 1332 because the matter is between citizens of different states and

7  the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiffs

8  are citizens of California, while Defendant is a citizen of Indiana.  The amount in

9  controversy readily exceeds $75,000 given Plaintiffs' statutory entitlement to

10  attorneys' fees in this action.  *See* Cal. Lab. Code § 925(c); *see also Galt G/S v. JSS*

11  *Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute

12  authorizes an award of attorneys' fees, either with mandatory or discretionary

13  language, such fees may be included in the amount in controversy").

14      12.    Venue is proper in the United States District Court for the Central

15  District of California, because Molina is headquartered within this District, Ms.

16  Mohan resides and works within this District and has done so at all times relevant to

17  this action, and Elevance is registered with the Secretary of State of California as a

18  foreign corporation authorized to do business in California and maintains offices

19  within this District.  Further, there is a substantial connection between the events

20  giving rise to this dispute and the District.

21                          **FACTUAL ALLEGATIONS**

22  *A.    The Parties*

23          **Molina**

24      13.    Molina is a California-based, Fortune 150 company that provides

25  managed healthcare services throughout the United States.  As of June 2023, Molina

26  served approximately 5.3 million members, across 19 states.

27      14.    Molina's managed healthcare services can be grouped into three primary

28  business lines: (i) Medicaid; (ii) Medicare; and (iii) state insurance marketplaces

("Marketplace").  Molina does not offer commercial lines of business.  Rather, the Medicaid, Medicare, and Marketplace pillars of Molina's business are all government-funded or sponsored programs under which Molina offers managed healthcare services.

15.     The Medicare segment is a particularly active growth sector for Molina, which serves several high acuity, low-income populations nationwide.  Molina's Medicare line of business currently employs approximately 1,800 individuals throughout the company.  The overarching responsibilities of the Medicare line of business are two-fold.  *First*, the group is responsible for ensuring regulatory compliance and day-to-day operations in existing Medicare plans offered by Molina.  That responsibility is particularly challenging given that the Medicare team must keep abreast of the rapid cadence of contract submission, evaluations, and renewals for existing plans.  *Second*, the group supports and executes Molina's expansion of the Medicare segment's footprint.  By way of example, Molina recently reached an agreement in June 2023 to acquire a Medicare health plan in California for $510 million, with an expected close date of early 2024.

**Elevance**

16.     Elevance, which changed its name from Anthem, Inc. on or about June 28, 2023, touts itself as one of the nation's leading healthcare benefit companies, serving approximately 40 million medical members in over 25 states through its affiliated health plans.  On information and belief, Elevance has approximately 77,000 employees.

17.     In the last few years, approximately 20 executives have left Elevance and chosen to work for Molina instead; many of these executives were offered executive roles with greater responsibility and opportunity at Molina compared to their roles at Elevance.

**Ms. Mohan**

18.     Ms. Mohan is a seasoned senior healthcare executive who has resided

and worked exclusively in California over the last 35 years.  Ms. Mohan began her career in the late 1990s as a financial auditor, first at KPMG and then at Wellpoint, Inc., a health insurance company based in Thousand Oaks, California that later became Elevance.  At Wellpoint, Ms. Mohan rose quickly through the company due to her exceptional talents, becoming Vice President of Finance – Medicare in 2006.  She then became Chief Financial Officer and Vice President – Consumer Business in 2009.  Between 2009 and 2012, Ms. Mohan led the financial strategy for Wellpoint's Consumer Business division covering individual, Medicare, and Medicaid programs servicing over five million medical members.

19.    In the past 20 years, Ms. Mohan has gone on to successfully lead several healthcare plans and managed healthcare service providers' commercial business and Medicare programs in senior executive positions, including: as the Chief Financial Officer for Sutter Health Plus, a start-up health plan based in Sacramento, California; the Chief Financial Officer and Vice President of Medicare Advantage for UnitedHealth Group in Santa Ana, California; and the Chief Financial Officer and Chief Development Officer of Scan Health Plan, a non-profit Medicare Advantage Health Plan based in Long Beach, California.

**B.**    ***Ms. Mohan is Hired by Elevance to Work in California, And Was Required to Enter into Numerous Agreements That Are Void Under California Law***

20.    In or around September 2020, Elevance interviewed Ms. Mohan for the position of President, Medicare West Region.  Ms. Mohan interviewed and negotiated for the position remotely from her home in Southern California, with the understanding that she would conduct her employment responsibilities remotely from California.

21.    In late August 2020, Elevance offered Ms. Mohan the position of President, Medicare West Region.  In that role, Ms. Mohan would lead Elevance's Medicare business for certain states in the Western United States—*e.g.*, Arizona, California, Colorado, New Mexico, Nevada, Texas, and Washington.

22.     The terms of Elevance's offer were set out in a letter (the "**Offer Letter,**" a copy of which is attached as **Exhibit 1**).  As detailed in the Offer Letter, Ms. Mohan was required to enter into numerous agreements as a condition of her employment with Elevance, including but not limited to an Employment Agreement, an Incentive Compensation Plan for stock grants, and an Executive Agreement Plan for additional compensation benefits.

23.     On or about September 24, 2020, Elevance emailed Ms. Mohan a written employment agreement for her to sign (the "**Employment Agreement**," a copy of which is attached as **Exhibit 2**).  Ms. Mohan reviewed and executed the terms of the Employment Agreement from California, without the assistance of legal counsel, and executed the Employment Agreement in California on September 24, 2020.

24.     The Employment Agreement incorporates by reference multiple agreements to which Ms. Mohan was required to agree as a condition of her employment.  These agreements incorporated by reference into the Employment Agreement include:

- Elevance's Executive Agreement Plan (a copy of which is attached as **Exhibit 3**);
- Elevance's Incentive Compensation Plan (a copy of which is attached as **Exhibit 4**);
- Nonqualified Stock Option Award Agreement, Performance Stock Unit Award Agreement, and Restricted Stock Unit Award Agreement - Grant Date 10/1/2020 ("2020 Equity Agreements", a copy of which is attached as **Exhibit 5**);
- Nonqualified Stock Option Award Agreement, Performance Stock Unit Award Agreement, and Restricted Stock Unit Award Agreement - Grant Date 3/1/2021 ("2021 Equity Agreements", a copy of which is attached as **Exhibit 6**);
- Nonqualified Stock Option Award Agreement, Performance Stock Unit

Award Agreement, and Restricted Stock Unit Award Agreement - Grant Date 3/1/2022 ("2022 Equity Agreements", a copy of which is attached as **Exhibit 7**); and

- Nonqualified Stock Option Award Agreement, Performance Stock Unit Award Agreement, and Restricted Stock Unit Award Agreement - Grant Date 3/1/2023 ("2023 Equity Agreements", a copy of which is attached as **Exhibit 8**) (2020, 2021, 2022, and 2023 Equity Agreements referred to collectively as "Equity Agreements").

*See* Employment Agreement, Ex. 2 at §§ 9(g), 20-21.  The Employment Agreement, the agreements identified above, and any other agreement Elevance required Ms. Mohan to sign as a condition of her employment are referred to collectively as the "Agreements."

25.    The Employment Agreement includes Indiana forum selection and choice-of-law provisions, which are illegal and unenforceable under California law, including under Labor Code Section 925(a)(1), which provides, in relevant part, that "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [r]equire the employee to adjudicate outside of California a claim arising in California."  The Agreements incorporated by reference into the Employment Agreement likewise contain substantially similar illegal and unenforceable Indiana forum selection and choice-of-law clauses.

26.    The forum selection provision at Section 17(f) of the Employment Agreement provides in relevant part:

. . . .  To the extent that any party wishes to seek such relief from a court, the parties agree to the following with respect to the location of such actions. Such actions brought by the Executive shall be brought in a state or federal court located in Indianapolis, Indiana. Such actions brought by the Company shall be brought in a state or federal court located in Indianapolis, Indiana; the Executive's state of residency; or any other forum in which the Executive is subject to personal jurisdiction. The

Executive specifically consents to personal jurisdiction in the State of Indiana for such purposes.

27.     The choice-of-law provision at Section 18 of the Employment Agreement provides:

This Agreement forms part of an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), and shall be governed by and construed in accordance with ERISA and, to the extent applicable and not preempted by ERISA, the law of the State of Indiana applicable to contracts made and to be performed entirely within that State, without regard to its conflicts of law principles.

28.     The Employment Agreement also includes post-employment restrictive covenants, which are void and unenforceable under both California Labor Code Section 925(a)(2), which provides, in relevant part, that "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California" and California Business & Professions Code Section 16600, which provides, in relevant part, that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." The Agreements incorporated by reference into the Employment Agreement likewise contain substantially similar, illegal and unenforceable post-employment restrictive covenants.

29.     Specifically, the Employment Agreement contains a "Non-Competition" provision at Section 9(c):

During the Employment Period, and any period in which Executive is employed by the Company during or after the Employment Period, and during the period of time after Executive's termination of employment as set forth in Schedule A, Executive will not, without prior written consent of the Company, directly or indirectly seek or obtain a Competitive Position in a Restricted Territory and perform a Restricted Activity with a Competitor, as those terms are defined herein.

30.     The Employment Agreement also contains a "Non-Solicitation of

Customers" provision at Section 9(d), prohibiting the solicitation of prospective or existing Elevance clients for a period of 12 months after the employee's termination of employment from Elevance.

31.   Further, Ms. Mohan was not represented by legal counsel when she entered into the Agreements and did not have legal counsel negotiate the terms of the Agreements.  Rather, they were presented to Ms. Mohan on a take-it-or-leave-it basis. Accordingly, the Indiana forum selection and choice-of-law provisions in the Agreements are voidable at Ms. Mohan's election under California Labor Code Section 925(b).

32.   Ms. Mohan may void these forum selection, choice-of-law, non-competition, and customer non-solicitation provisions because they violate California Labor Code Section 925(a)(1)-(2), and as further provided under California Labor Code Section 925(b), "[a]ny provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute."

33.   Indeed, Elevance has acknowledged in some of the Agreements that:
> If California law is deemed to apply, then the following applies to Participant:  (a) the noncompetition restriction in  Section 7(b) shall not apply; (b) the Employee non-solicitation restrictions shall not apply; and Section 7(c) [imposing customer non-solicitation restrictions] shall be limited to situations where Participant is aided in his or her conduct by the use or disclosure of the Company's trade secrets (as defined by applicable law).

Ex. 8, at pages 12, 29 & 45.

34.   Through the voiding letter sent to Elevance's Chief Legal Officer, and by filing this Complaint, pursuant to Section 925(b) of the California Labor Code, Ms. Mohan has exercised her right to void these forum selection, choice-of-law, non-

competition, and non-solicitation provisions contained in the Agreements. Any employment-related disputes between Ms. Mohan and Elevance arising in California must therefore be adjudicated in California under California law.  Further, according to the carve-out provisions in the Equity Agreements discuss above, Elevance now concedes that the non-competition provision shall not apply, and the customer non-solicitation provision shall apply only if Ms. Mohan is aided in her conduct by the use or disclosures of Elevance's trade secrets, as defined under California law.

35.     The Employment Agreement also includes an attorneys' fees provision in Section 19 which states:  "In the event of any contest arising under or in connection with this Agreement, the arbitrator or court, as applicable, shall award the prevailing party reasonable attorneys' fees and costs to the extent permitted by applicable law."

## C.     *In July 2023, Ms. Mohan Accepted an Offer of Employment from Molina*

36.     In July 2023, Ms. Mohan accepted an offer of employment from Molina to become its Senior Vice President of Medicare, wherein she would be responsible for Molina's Medicare business nationwide—a significant increase in responsibilities compared to her position at Elevance (which was limited to western region of the United States).  Molina is headquartered in Long Beach, California, not far from Ms. Mohan's home.

37.     It was of utmost importance to Ms. Mohan and Molina that her departure from Elevance be absolutely professional and above-board, and that Ms. Mohan comply with all of her legal and ethical obligations in her transition.  To that end, Ms. Mohan worked closely with Molina's Senior Vice President and Deputy General Counsel to make sure she had proper guidance as to those obligations.

38.     Thus, on the morning of July 17, 2023, while at her home in California, Ms. Mohan gave telephonic notice to her supervisor at Elevance that she was resigning.  Ms. Mohan told her supervisor at that time that she had accepted a position with Molina.  Ms. Mohan's supervisor instructed her to send out an official letter of resignation, put an out-of-office notification on her Elevance email, and cease further

use of her computer—instructions which Ms. Mohan followed exactly.  She promptly shut down her computer and did not turn it back on.

39.    Also on July 17, 2023, at Ms. Mohan's direction, Molina sent a letter to Elevance's Chief Legal and Human Resources Officer, Blair Todt, to confirm, *inter alia*, that (a) Ms. Mohan had accepted a position as Senior Vice President of Medicare at Molina; (b) Ms. Mohan's start date at Molina would be August 30, 2023; and (c) Ms. Mohan was "exercising her rights . . . to void certain provisions of her Employment Agreement [and] hereby immediately voids Sections 17(f) and 18 of the Agreement" (the forum selection and choice-of-law provisions) pursuant to California Labor Code section 925.  (the "**Voiding Letter**," a copy of which is attached as **Exhibit 9**).  Ms. Mohan's letter served as a matter of law to void the Employment Agreement and all Agreements incorporated by reference.  Molina further requested that "any correspondence concerning the information contained in this letter" be directed to the attention of Molina's counsel.  *Id.*

40.    At no time on July 17, 2023 or thereafter did Ms. Mohan review any Elevance documents or confidential information.  After she submitted her resignation and turned off her computer that day, Ms. Mohan did not use her Elevance-issued computer, printer, phone or any other device to access or attempt to access any Elevance document or information.

41.    On July 21, 2023, Ms. Mohan received an email from Elevance, providing her with instructions for returning her work-issued devices by mail. **Exhibit 10.**  Ms. Mohan followed these instructions and mailed all of her Elevance-issued devices—an iPad, laptop, printer, and phone—back to Elevance on July 22, 2023.  She took pictures of these items for her records, which are attached as **Exhibit 11.**

42.    Ms. Mohan had a practice of shredding Elevance confidential documents she printed during the course of her work, but she still had a handful of documents she had not yet shredded at the time she accepted the Molina offer.  Although Elevance

did not ask her to do so, Ms. Mohan gathered all of her remaining hardcopy Elevance documents in her possession, sequestered them in a box without reviewing or memorializing them, and sealed the box until she received subsequent instructions on where to return Elevance's devices.  At Ms. Mohan's direction, Molina sent another letter to Mr. Todt at Elevance on August 4, 2023, advising Elevance of the box of documents and requesting direction from Elevance as to what to do with the documents inside.  ("August 4 Letter," a copy of which is attached as **Exhibit 12**). Elevance advised Molina that Ms. Mohan should mail the box to Elevance, and she did so promptly.

43.     At no time did Elevance provide a response or an objection to the July 17 Voiding Letter, in which Elevance was advised of Ms. Mohan's exercise of her rights to void the forum selection and choice-of-law provisions of the Employment Agreement.

**D.     Elevance Retaliates by Suing Ms. Mohan in an Improper Forum in a State with No Jurisdiction Over Her**

44.     For five weeks after Ms. Mohan's resignation, Elevance raised no objections to or concerns with Ms. Mohan's departure to either Ms. Mohan or Molina (who had expressly asked to be the point of contact regarding matters pertaining to Ms. Mohan).

45.     Meanwhile, Molina's then-Senior Vice President of Medicare retired effective August 1, 2023.  Molina, having no indication from Elevance that there was any impediment to Ms. Mohan's scheduled August 30 start date, supported the senior executive's August 1 retirement date and did not seek to extend that date based on its expectation that Ms. Mohan would soon be stepping into that position.

46.     Likewise, Ms. Mohan fully expected to start at Molina on August 30, 2023.  Before her scheduled start date at Molina, Ms. Mohan devoted most of her time to preparations for her son's wedding—a seven-day celebration from August 20-27 that included several events hosted at her family's home in California.  Ms. Mohan's

colleagues at Elevance knew the scheduled dates of the wedding, as Ms. Mohan had scheduled time off from Elevance months in advance.

47.   Then on August 23, 2023—five weeks after she gave notice to Elevance, and in the middle of a wedding event that Ms. Mohan was hosting at her home— Elevance personally served Ms. Mohan with a summons, complaint, temporary restraining order ("TRO"), and discovery demands in front of her family and friends. Elevance did not contact Molina to inquire whether it would accept service of the complaint on Ms. Mohan's behalf, which Molina would have agreed to do as a professional courtesy and to shield Ms. Mohan from having to be personally served.

48.   Elevance's action against Ms. Mohan is captioned *Elevance Health, Inc. v. Vinod Mohan*, Case No. 1:23-cv-1497, filed in the U.S. District Court for the Southern District of Indiana ("Indiana Action").

49.   The complaint in the Indiana Action is premised on one alleged act which, even if true, occurred in California:  Elevance claims that Ms. Mohan "attempted to print" a confidential PowerPoint from her work-at-home printer on the day she gave notice, and *if* the printing was successful (which Elevance concedes it does not know), Ms. Mohan *could* use its information to give Molina a competitive advantage.  Elevance also alleges a theory of "inevitable disclosure" based on generalized allegations that Ms. Mohan learned confidential information from her time with Elevance (while working in California), and will inevitably disclose that information to Molina (a California company).  California does not recognize this theory.

50.   Based on these threadbare allegations, Elevance alleges claims for (i) Breach of Contract, (ii) Violation of the Indiana Uniform Trade Secrets Act, Ind. Code § 24-2-3-1 *et seq.*, (iii) Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832 *et seq.*, (iv) Breach of Fiduciary Duty, (v) Conversion, (vi) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and (vii) Violation of Indiana's Computer Trespass Statute, Ind. Code § 34-43-2-3.

51.     On August 25, 2023, following a scheduling conference in the Indiana Action regarding Elevance's TRO, the court issued a scheduling order specifying that Ms. Mohan would file a motion to dismiss/motion to transfer venue on or before August 30, 2023; Elevance would file its response on or before September 6, 2023; and Elevance's TRO and motion for expedited discovery would be held in abeyance.

52.     Ms. Mohan and Elevance thereafter attempted to negotiate an agreement to establish a date certain by which Ms. Mohan may begin employment at Molina in the event the court does not rule promptly on her pending Motion to Dismiss. Elevance advised it will not agree to any date certain before the Motion to Dismiss is adjudicated, and thus Ms. Mohan faces an indefinite inability to start work at Molina.

53.     Given the foregoing, Ms. Mohan and Molina require Court action to declare the rights of the parties and prevent Elevance from enforcing the illegal and enforceable provisions contained in the Agreements.

54.     Ms. Mohan will suffer irreparable harm for which there is no adequate remedy if Elevance remains free to seek to enforce these provisions in disregard of governing California law.  Ms. Mohan is the sole income earner in her family, and the present threat to her livelihood jeopardizes her ability to support her family.

55.     Moreover, Ms. Mohan risks imminent and irreversible harm to her career and professional reputation.  Ms. Mohan has risen to the highest executive positions in healthcare companies precisely because of her unblemished integrity and professional excellence—that reputation is now being called into question by Elevance's accusations, which is particularly unjust considering that Elevance is the party flouting the law.  Indeed, Elevance's unsupported allegations were reported in a trade publication, the *Health Payer Specialist*.  Ms. Mohan respectfully requests that the Court enjoin Elevance from taking any action to enforce the illegal and unenforceable provisions of the Agreements, as described herein, so that Ms. Mohan can start working at Molina as Senior Vice President of Medicare.

56.     As Ms. Mohan's current employer, Molina is a person of interest under

California Code of Civil Procedure § 1060 and has interests under relevant sections of the Agreements between Elevance and Ms. Mohan.  Molina requires court action to declare the rights of the parties and prevent Elevance from enforcing the illegal and unenforceable provisions in the Agreements.

57.    Molina will also suffer irreparable harm for which there is no adequate remedy if Elevance is permitted to enforce unlawful and voided provisions in the Agreements and effectively bar Ms. Mohan from working at Molina indefinitely. Molina hired Ms. Mohan to run one of its most significant business lines (Medicare). Molina's Medicare line of business currently employs approximately 1,800 individuals throughout the company.  The group's key responsibilities are to (i) ensure the regulatory compliance and day-to-day operations in existing Medicare plans offered by Molina; and (ii) execute on Molina's expansion of the Medicare segment's footprint.  There is currently no one executive in the role of Senior Vice President of Medicare position.  Thus, there is no executive who is currently 100% responsible for the oversight, management, growth and development of Molina's Medicare business line.

58.    The need for Ms. Mohan to join immediately is particularly critical, as Medicare's open enrollment begins in October and there are numerous imminent deadlines and deliverables for the Medicare business line that must be met to ensure a successful start in 2024.

59.    Each day where Ms. Mohan cannot step in and apply her deep Medicare expertise and leadership over this key pillar for the company undermines the Medicare growth strategy established by Molina and threatens its ability to continue delivering quality service to existing Medicare members.

## **FIRST CAUSE OF ACTION**

### **Declaratory Judgment – Cal. Code Civ. Proc. § 925(a)**

60.     Plaintiffs repeat and reallege the allegations contained in each and every preceding paragraph of this Complaint as if set forth herein in full.

61.     Section 1060 of the California Code of Civil Procedure permits "[a]ny person interested . . . under a contract . . . in cases of actual controversy relating to the legal rights and duties of the respective parties, [to] bring an original action or cross-complaint . . . for a declaration of his or her rights and duties . . . ."

62.     As a condition of her employment with Elevance, Ms. Mohan was required to agree to the Agreements, which contain Indiana forum selection and choice-of-law provisions—*e.g.*, the Sections 17(f) and 18 of the Employment Agreement.

63.     Ms. Mohan entered into the Agreements on or about September 24, 2020, without the assistance of counsel.

64.     The forum selection and choice-of-law provisions in the Agreements require Ms. Mohan to adjudicate any claims arising out of or relating to the agreements in a state or federal court located in Indiana and applying Indiana law, despite the fact that Ms. Mohan lived and worked in California during her entire tenure with Elevance.

65.     The non-competition and non-solicitation provisions in the Agreements restrict Ms. Mohan's ability to work in her chosen profession and prohibit the solicitation of certain clients, both in violation of the substantive protections of California law.

66.     Section 925(a) of the California Labor Code provides, "An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following: (1) Require the employee to adjudicate outside of California a claim arising in California. [or] (2) Deprive the employee of the substantive protection of California

law with respect to a controversy arising in California."

67.    Section 925(b) of the California Labor Code provides, "Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute."

68.    Through the Voiding Letter, which Molina sent to Elevance on behalf of Ms. Mohan, and by filing this Complaint, Ms. Mohan has exercised her right to void the Indiana forum selection, Indiana choice-of-law, non-competition, and non-solicitation provisions contained in the Agreements.

69.    Elevance has ignored Ms. Mohan's voiding of these provisions in the Agreements and has filed suit against Ms. Mohan in federal court in Indianapolis, Indiana.

70.    An actual controversy exists involving justiciable questions relating to the rights and obligations of the Parties—*i.e.*, whether these provisions in the Agreements violate Section 925 of the California Labor Code, and whether Ms. Mohan validly and effectively voided these provisions under California Labor Code Section 925(b).

71.    A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights, duties, and future obligations under the Agreements.

## SECOND CAUSE OF ACTION

## Declaratory Judgment – Cal. Bus. & Prof. Code § 16600

72.    Plaintiffs repeat and reallege the allegations contained in each and every preceding paragraph of this Complaint as if set forth herein in full.

73.    Section 1060 of the California Code of Civil Procedure permits "[a]ny person interested . . . under a contract . . . in cases of actual controversy relating to the legal rights and duties of the respective parties, [to] bring an original action or cross-complaint . . . for a declaration of his or her rights and duties . . . ."

74.    Given that Elevance is currently pursuing claims against Ms. Mohan in

Indiana and attempting to prevent Ms. Mohan from beginning her employment with Molina based on false accusations of trade secret misappropriation, an actual controversy exists involving justiciable questions relating to the rights and obligations of the Parties—*i.e.*, whether the post-employment "Non-Competition" and "Non-Solicitation of Customers" provisions in the Agreements are enforceable.

75.     Plaintiffs seek a judicial determination of their rights and obligations under the Agreements, which are necessary and appropriate subjects of declaratory relief under California law, so that Plaintiffs have clarity regarding her employment at Molina in light of the illegal post-employment restrictions contained in certain of the Agreements.

76.     Specifically, Plaintiffs request that the Court declare the following:  "The post-employment non-competition and customer non-solicitation provisions in the Agreements are void and unenforceable under Section 16600 of the California Business and Professions Code."  *See* Employment Agreement, § 9(c)-(f).

77.     Without the requested declaration, Plaintiffs will remain in a position of uncertainty as to Ms. Mohan's employment with Molina, including whether she can perform the duties and responsibilities required of her without being subject to the illegal restrictions contained in the Agreements.

78.     A judicial declaration is necessary and appropriate so that Plaintiffs may ascertain their rights, duties, and future obligations under the Agreements.

## THIRD CAUSE OF ACTION

## Violation of Cal. Lab. Code § 925 – Injunctive Relief and Attorneys' Fees

79.     Plaintiffs repeat and reallege the allegations contained in each and every preceding paragraph of this Complaint as if set forth herein in full.

80.     The Agreements purport to require Ms. Mohan to consent to jurisdiction in state or federal court located in Indianapolis, Indiana and to the application of Indiana law—*e.g.*, Sections 17(f) and 18 of the Employment Agreement.

81.     The Agreements also purport to restrict Ms. Mohan's ability to work in

her chosen profession through the non-competition provision and prohibit the solicitation of certain clients through the non-solicitation provision, both in violation of the substantive protection of California law.

82.    Elevance has sued Ms. Mohan in federal court in Indianapolis, Indiana in an effort to enforce the illegal provisions of the Agreements and deprive Ms. Mohan of the substantive protections of California law.  In so doing, Elevance has ignored the fact that the forum selection, choice-of-law, non-competition, and non-solicitation provisions are voidable under California law and that Ms. Mohan properly voided the provisions well before Elevance filed suit.  Pursuant to California Labor Code § 925, Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting Elevance from taking any actions to enforce the illegal and unenforceable provisions in the Agreements.  As shown above, Plaintiffs are likely to prevail on the merits of their claims given that these provisions are void or voidable under well-settled California law and public policy.

83.    If Elevance is not preliminarily and permanently enjoined from taking further action to enforce the unlawful provisions of the Agreements, Ms. Mohan is likely to sustain irreparable harm, including to her reputation and her ability to earn a living in her chose profession.

84.    If Elevance is not preliminarily and permanently enjoined from taking further action to enforce the unlawful provisions of the Agreements, Molina is likely to sustain irreparable harm, including to its Medicare business, which is crucial to Molina and which it hired Ms. Mohan to lead.

85.    Plaintiffs are further entitled to any other remedies available, including, but not limited to, their reasonable attorneys' fees and the costs of this action.  *See* Cal. Lab. Code § 925(c) ("In addition to injunctive relief and any other remedies available, a court may award an employee who is enforcing his or her rights under this section reasonable attorney's fees.").

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for the following relief:

1.   A judicial declaration pursuant to Plaintiffs' First Cause of Action that:

    a.   The Agreements' Indiana forum selection, Indiana choice-of-law, non-competition, and non-solicitation provisions are unenforceable and voidable at Ms. Mohan's election under California Labor Code § 925(a);

    b.   Ms. Mohan has properly voided the Indiana forum selection, Indiana choice-of-law, non-competition, and non-solicitation provisions in the Agreements pursuant to California Labor Code § 925(b);

    c.   The Indiana forum selection, Indiana choice-of-law, non-competition, and non-solicitation provisions in the Agreements are void and may not be enforced against Ms. Mohan; and

    d.   Any claims as between Elevance and Ms. Mohan arising in California shall be adjudicated in California, and California law shall govern the dispute, consistent with California Labor Code § 925(b);

2.   A judicial declaration pursuant to Plaintiffs' Second Cause of Action that the Agreements' post-employment restrictive covenants are void and unenforceable under California Business and Professions Code section 16600;

3.   A preliminary and permanent injunction pursuant to Plaintiffs' Third Cause of Action prohibiting Elevance from taking any action to enforce the Indiana forum selection, Indiana choice-of-law, non-competition, and customer non-solicitation provisions in the Agreements against Plaintiffs;

4.   An award of all costs, expenses, attorneys' fees, and pre- or post-judgment interest to the extent permitted by California Labor Code section 925, the Employment Agreement, or any other applicable statute, contract, or equitable principles;

5.   Any other declaratory and injunctive relief necessary to protect Plaintiffs from the illegal provisions in the Agreements; and

6.   Such other and further relief as the Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

DATED:  September 7, 2023          KING & SPALDING LLP


By   */s/ Quyen L. Ta*
_____
          QUYEN L. TA
          JEANNE A. FUGATE
          LENNETTE W. LEE

Attorneys for MOLINA HEALTHCARE, INC.
and VINOD MOHAN

COMPLAINT