1  **KING & SPALDING LLP**
   QUYEN L. TA (SBN 229956)
2    *qta@kslaw.com*
   JEANNE A. FUGATE (SBN 236341)
3    *jfugate@kslaw.com*
   LENNETTE W. LEE (SBN 263023)
4    *llee@kslaw.com*

5  50 California Street
   Suite 3300
6  San Francisco, CA  94111
   Telephone:   (415) 318-1200
7  Facsimile:    (415) 318-1300

8  633 West Fifth Street
   Suite 1600
9  Los Angeles, CA
   90071
10 Telephone:   (213) 443-4355
   Facsimile:    (213) 443-4310

11
   Attorneys for Plaintiffs
12 MOLINA HEALTHCARE, INC.
   and VINOD MOHAN

13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

17 MOLINA HEALTHCARE, INC., a          Case No. 2:23-cv-07417-AB-JC
   California corporation; and
18 VINOD MOHAN, an individual,
                                       **PLAINTIFFS MOLINA**
19           Plaintiffs,               **HEALTHCARE, INC.'S AND VINOD**
                                       **MOHAN'S OPPOSITION TO**
20         v.                          **DEFENDANT ELEVANCE HEALTH,**
                                       **INC.'S EMERGENCY MOTION TO**
21 ELEVANCE HEALTH, INC., an           **STAY ALL PROCEEDINGS**
   Indiana corporation
22                                     **[Declaration of Quyen L. Ta with**
           Defendant.                  **Exhibit in Support filed concurrently**
23                                     **herewith]**

24

25

26

27

28

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..............................................................................................1

II.   RELEVANT FACTUAL BACKGROUND ......................................................3

    A.   Elevance Improperly Forum Shops and Files the Indiana Action....................3

    B.   Ms. Mohan Challenges Personal Jurisdiction in the Indiana Action and the
        Parties Begin Negotiating a Standstill Agreement ............................................5

    C.   Unable to Seek Relief in Indiana While Her Jurisdictional Motion Is Pending,
        Ms. Mohan and Molina Seek Immediate Relief From this Court, Where the
        Parties' Dispute Is Required to Be Adjudicated ................................................7

    D.   Elevance Files a Procedurally Improper "Emergency Motion" Without
        Meeting and Conferring or Providing *Ex Parte* Notice....................................7

III.  APPLICABLE LEGAL STANDARDS........................................................7

    A.   *Ex Parte* Applications ......................................................................................7

    B.   Motions to Stay Proceedings ............................................................................8

IV.   THE COURT SHOULD DENY ELEVANCE'S IMPROPER AND MERITLESS
      "EMERGENCY" MOTION TO STAY ............................................................9

    A.   Elevance's Motion Should Be Denied as a Procedurally Improper *Ex Parte*
        Application..........................................................................................................9

    B.   The Orderly Course of Justice Requires This Court to Proceed and a Rejection
        of Elevance's Requested Stay ..........................................................................10

        1.   Elevance's Stay Argument Is Based on the Incorrect Premise that Ms.
            Mohan Has Agreed to an Indefinite Standstill in the Indiana Action......10

        2.   The First-to-File Doctrine Does Not Apply and Should Not Apply Given
            Elevance's Bad Faith Tactics in Lulling Ms. Mohan and Molina into Not
            Filing Suit.................................................................................................11

        3.   Denying Elevance's Stay Motion Would Further the Orderly Resolution
            of This Dispute By Determining the Applicable Law and Forum...........15

    C.   The Harm to Plaintiffs is Irreparable if This Case is Stayed, Whereas Elevance
        Fails to Demonstrate Any Hardship if Required to Go Forward.....................16

V.    CONCLUSION ................................................................................................18

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alltrade, Inc. v. Uniweld Prod., Inc.*,

5

   946 F.2d 622 (9th Cir. 1991) ................................................................11, 13

6

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,

7

   No. CV 12-10763 MMM, 2013 WL 12129650 (C.D. Cal. Apr. 19,
   2013) .........................................................................................................13

8

*CMAX, Inc. v. Hall*,

9

   300 F.2d 265 (9th Cir. 1962) .................................................................2, 8

10

*Deville v. Specialized Loan Servicing, LLC*,

11

   No. EDCV 205576 JGB (Ex), 2020 WL 7121537, at *3 (C.D. Cal.

12

   Octo. 15, 2020 ............................................................................................9

13

*Jemella Grp. Ltd v. Living Proof Inc.*,

   No. CV 13-05740-BRO, 2013 WL 12116392 (C.D. Cal. Dec. 23,

14

   2013) .........................................................................................................13

15

*Landis v. North American Co.*,

16

   299 U.S. 248 (1936).............................................................................2, 8, 18

17

*Mission Power Engineering Co. v. Continental Cas. Co.*,

18

   883 F.Supp. 488 (C.D. Cal. 1995) ...........................................................8

19

*MySpace, Inc. v. Wallace*,

20

   498 F. Supp. 2d 1293 (C.D. Cal. 2007)..................................................16

21

*Philo v. Giftango, LLC*,

22

   No. 13 cv 0094 JML (BLM), 2013 WL 12097545 (S.D. Cal. Feb. 7,
   2013) .........................................................................................................17

23

*Prohbtd Media, Inc. v. VMR Prod., LLC*,

24

   No. LA CV 18-05593 JAK, 2018 WL 6012224 (C.D. Cal. Nov. 13,

25

   2018) .........................................................................................................13

26

*Roederer v. Treister*,

   2 F. Supp. 3d 1153 (D. Or. 2014) ...........................................................17

27

28

OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO STAY

*Silvers v. Verbata*,
  No. 2:21-cv-05808-VAP-RAOx, 2021 WL 6882156 (C.D. Cal Oct. 8
  2021) ............................................................................................................. 13

*Vivendi SA v. T-Mobile USA Inc.*,
  586 F.3d 689 (9th Cir. 2009) ..................................................................... 14

**Statutes**

California Labor Code section 925 .................................................................*passim*

**Other Authorities**

Fed. R. of Civ. 12(b)(2) & 12(b)(3) ........................................................... 5, 6

Fed. R. of Civ. 2(b)(3) ............................................................................... 5, 6

Fed. R. of Civ. P. 65 ...................................................................................... 9

L.R. 7-9 ........................................................................................................... 9

L.R. 7-19 .............................................................................................. 7, 8, 9

L.R. 7-3 ........................................................................................................... 7

L.R. 7-19.1 ..................................................................................................... 7

L.R. 65-1 ......................................................................................................... 9

L.R. 77-1 ......................................................................................................... 9

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.     INTRODUCTION**

3       Elevance Health, Inc.'s aim is to keep its former employee Vinod Mohan from

4  starting her important work for its competitor Molina Healthcare, Inc. at a critical

5  juncture for Molina's Medicare business.  To accomplish this goal, Elevance made

6  flimsy trade secret misappropriation claims against Ms. Mohan based on the

7  speculative, conclusively refuted, and non-actionable allegation that Ms. Mohan

8  *attempted* to print a confidential document on the day she resigned from Elevance.

9  Not content to disrupt just her professional life, Elevance personally served her with

10 the lawsuit at an event for her son's wedding (of which Elevance was well aware for

11 many months).

12      Elevance, moreover, filed its baseless action in *Indiana*—where any basis for its

13 claims did not arise and based on forum selection and choice of law clauses that Ms.

14 Mohan had *already voided*—thereby requiring Ms. Mohan to bring a motion to

15 dismiss for lack of personal jurisdiction before she could raise any of her substantive

16 defenses.  Then, while the jurisdictional motion was pending, Elevance refused to

17 agree to a date certain by which Ms. Mohan could begin her new job at Molina, taking

18 the position that she should remain sidelined for at least as long as the jurisdictional

19 motion remains pending.

20      By deploying these bad faith tactics, Elevance is intentionally dragging out Ms.

21 Mohan's start date and stands to obtain by default the temporary restraining order that

22 it could never obtain on the merits.  To prevent Elevance from ending up with a *de*

23 *facto* temporary restraining order against her, Ms. Mohan and Molina had no recourse

24 but to file this action in California to protect their rights under California Labor Code

25 section 925.

26      Ms. Mohan and Molina respectfully request an immediate hearing on their *ex*

27 *parte* application for a temporary restraining order in this Court (Dkt. 5) to ensure that

28 Plaintiffs' rights are not further jeopardized by Elevance's forum shopping and bad

1

faith tactics.  Desperate not to have its claims heard in California as the law requires, Elevance has filed a procedurally improper "emergency motion"—without meeting and conferring under the Local Rules or otherwise satisfying the standards for *ex parte* relief—asking this Court to stay this action.  In addition to its motion being fatally procedurally improper, Elevance's purported bases for a stay do not justify this discretionary relief under the three factors set forth in *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).[1]

*First,* the orderly resolution of this dispute favors denying, not granting, the stay because Plaintiffs' pending TRO application will establish the proper forum and applicable law for this dispute.  Elevance asks this Court to defer instead to a purported indefinite standstill agreement by which they say Ms. Mohan, through counsel, agreed to stay sidelined from her job at Molina for an indefinite period. Elevance deliberately <u>omits</u>, however, that there is no such agreement because the parties were never able to reach a meeting of the minds as to an end date.[2]  Elevance's attempt to invoke the first-to-file doctrine also fails, because this action involves different parties and issues, and application of the discretionary doctrine here would reward Elevance for its forum-shopping and bad faith conduct in lulling Ms. Mohan and Molina into not filing suit in California.  Finally, the remaining *Landis* factors also weigh decidedly against a stay because a stay would cause further damage to Ms. Mohan's livelihood and reputation and Molina's business, while the only harm to Elevance of denying the stay is *not* being able to enforce illegal provisions in Ms. Mohan's employment contract.

[1]  The three *Landis* factors are: (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law the possible damage which may result from the granting of a stay"; (2) "the possible damage which may result from the granting of a stay"; and (3) "the hardship or inequity which a party may suffer in being required to go forward."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).
[2] The parties' correspondence on this issue, which Elevance fails to include with its motion, is attached to the Declaration of Quyen Ta at Exhibit 1.

The Court should deny Elevance's request that this Court step aside so that Elevance can improperly restrain Ms. Mohan's ability to work in contravention of California law and without having to make the showing required for such injunctive relief. Ms. Mohan and Molina respectfully request that the Court deny Elevance's improper motion to stay and instead set Plaintiffs' pending application for a temporary restraining order for hearing as soon as possible.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Elevance Improperly Forum Shops and Files the Indiana Action

Elevance's wrongful conduct and improper attempt to hale Ms. Mohan into an Indiana court are discussed in full in Plaintiffs' Complaint and Application for a TRO. *See* Dkt. 1, ¶¶ 22-50; Dkt. 5 at 4-13. Briefly, for the Court's reference:

- Ms. Mohan is a California resident who has worked in California at all relevant times, Dkt. 5 at 4-5;
- In **September 2020**, Elevance presented Ms. Mohan with employment agreements containing illegal Indiana forum selection, Indiana choice of law, and restrictive covenant provisions, which Ms. Mohan was required to agree to as a condition of her employment at Elevance—a position as President of the Medicare West Region where she would work from California. Ms. Mohan agreed to them without the assistance of counsel, *id.* at 5-7;
- On **July 17, 2023**, Ms. Mohan gave notice to Elevance of her resignation and intention to start a new position at Molina, as Senior Vice President of Medicare, on August 30, 2023, *id.* at 7. She promptly followed Elevance's instructions to cease all use of and access to Elevance's equipment and confidential materials, and at no time thereafter attempted to review, access, or print any of Elevance's materials, *id.* at 9;
- Also on **July 17, 2023**, Molina's Senior Vice President and Deputy Counsel, wrote to the Elevance Chief Legal Officer, Blair Todt, at Ms. Mohan's direction to notify Elevance that, *inter alia*, Ms. Mohan was exercising her rights

1    pursuant to California Labor Code section 925 to void the Indiana forum
2    selection and Indiana choice of law provisions in her Elevance agreements and
3    that the restrictive covenants in the same agreements were void under California
4    law as well, *id.* at 9-10.  Molina's letter to Elevance's Chief Legal Officer also
5    instructed Elevance to direct any communications regarding Ms. Mohan's
6    departure to Molina's legal counsel, *id.* at 9-10;

7  • Elevance did not object to Ms. Mohan's exercise of her section 925 rights or
8    contest that, as a result of her voiding the illegal provisions, California forum
9    selection and choice of law would apply to any disputes between her and
10   Elevance.  Elevance also did not contend that those same provisions in the
11   agreements that were incorporated by reference into the Employment
12   Agreement would somehow separately need to be voided, *id.* at 10-11;

13 • On **August 4, 2023**, Molina's Senior Vice President and Deputy Counsel wrote
14   again to Elevance's Chief Legal Officer, Blair Todt, this time notifying
15   Elevance that Ms. Mohan had sequestered the small number of Elevance
16   documents that remained in her possession and asking whether Elevance would
17   like these documents to be shredded or returned.  Dkt. 5-12.  To this letter,
18   Elevance responded, instructing Ms. Mohan to send the box of documents to
19   Elevance, which she did promptly, Dkt. 5 at 9;

20 • On **August 23, 2023**—five weeks after Ms. Mohan gave notice, and without
21   any prior communication to Ms. Mohan or Molina on the matter—Elevance
22   personally served her with a Complaint and Motion for a TRO filed in the U.S.
23   Southern District of Indiana ("Indiana Action"), while she was hosting a
24   wedding event for her son at her California home, *id.* at 10-11;

25 • Elevance's claims and effort to enjoin her from working at Molina are premised
26   on a single suspected act:  that Ms. Mohan "attempted to print" one confidential
27   PowerPoint at her home in California on the day she gave notice and *if* that
28   printing was successful, Ms. Mohan could use the information to give Molina a

competitive advantage, *id.* at 11-12.  Elevance has not provided any evidence of the alleged attempt to print, which Ms. Mohan has wholly refuted under penalty of perjury.  In an attempt to bolster its whisper thin allegations, Elevance also purports to rely on an "inevitable disclosure" theory of trade secret misappropriation, a theory which California law rejects as an unreasonable restraint on trade.

**B.    Ms. Mohan Challenges Personal Jurisdiction in the Indiana Action and the Parties Begin Negotiating a Standstill Agreement**

Ms. Mohan's counsel filed a limited appearance for the sole purpose of objecting to lack of personal jurisdiction and improper venue in Indiana.  The court held a telephonic status conference on August 25, 2023, to discuss a schedule regarding Elevance's Motion for a TRO.  Declaration of Quyen L. Ta ("Ta Decl.") ¶ 4.  During that call, Ms. Mohan's counsel explained that the issue of the Court's personal jurisdiction over Ms. Mohan is a gating issue that must be resolved before the court can resolve Plaintiff's request for expedited discovery and injunctive relief. *Id.*

The court allowed the parties' counsel an opportunity to work through the scheduling issues themselves.  *Id.* at 5.  During the attorneys-only session, counsel agreed on an expedited briefing schedule for Ms. Mohan's Rule 12(b)(2) & 12(b)(3) motion to dismiss that would be completed by September 6, 2023.  Ms. Mohan's counsel proposed a standstill for Ms. Mohan solely during the expedited briefing of the jurisdictional issue.  *Id.*  Ms. Mohan's counsel also specifically objected to a court-ordered standstill, and asked the Court to set a hearing on the jurisdictional motion immediately.  Ms. Mohan's counsel also requested that the parties be able to enter into a private agreement relating to the jurisdictional issue, to which both sides agreed.  *Id.*

It was Ms. Mohan's counsel's understanding and expectation that the parties would negotiate and finalize an agreement between counsel about Ms. Mohan's start date. *Id.*, ¶ 6.  It was never the intention of Ms. Mohan's counsel to agree to an

1    indefinite standstill with no concrete end-date while the parties awaited a ruling on the

2    motion to dismiss.  *Id.*  Quite the opposite; indeed, such an indefinite agreement

3    would effectively serve as a temporary restraining order on Ms. Mohan's ability to

4    begin working at Molina, which would have been directly contrary to Ms. Mohan's

5    position that a TRO preventing her from working for Molina is not proper.  *Id.*

6          Following the attorneys-only session, counsel advised the court that the parties

7    would document the standstill terms in a private agreement.  *Id.*, ¶ 7.  The specific

8    terms of the standstill were to be reduced to writing and signed by the parties.  *Id.*  The

9    court therefore issued a scheduling order that identified the briefing deadlines upon

10   which the parties had agreed.  *See* Dkt. 13-4.  The court also included a reference to

11   the forthcoming standstill agreement, apparently reflecting the court's understanding

12   that the standstill would remain in effect until it ruled on Ms. Mohan's jurisdictional

13   motion—*which was never the intention or understanding of Ms. Mohan or her*

14   *counsel representing her in that scheduling conference*.  *Id.*

15         On August 29, 2023, Elevance's counsel shared a draft standstill agreement

16   with the undersigned counsel and sought input on the draft.  Ta Decl., ¶ 8.  As set

17   forth in counsel's correspondence thereafter, it was immediately apparent that the

18   parties had not reached agreement on a material term of such standstill—namely,

19   whether the standstill would expire upon completion of the briefing on Ms. Mohan's

20   motion to dismiss, or whether it would remain in effect until the court ruled on such

21   motion.  *Id.* at Ex. 1.

22         Ms. Mohan's counsel attempted to find a resolution to the parties' disconnect

23   that would not require court intervention.  As one potential solution, Ms. Mohan's

24   counsel even proposed agreeing upon an expedited briefing schedule on Elevance's

25   Motion for a TRO, while preserving her jurisdictional defenses, provided Elevance

26   agreed to a date certain by which Ms. Mohan could begin work at Molina.  *Id.,* ¶ 9.

27   Elevance, however, continues to insist that Ms. Mohan cannot start work until *after*

28   the court rules on the pending motions, hoping to drag out Ms. Mohan's start date

1   indefinitely.  *Id.*  As the parties were not able to reach an agreement on the length of

2   the standstill of Ms. Mohan's employment, there was no "meeting of the minds" with

3   respect to this essential term, and therefore there is no "agreement" as Elevance now

4   contends.  *See* Dkt. 13 at 3-5.

5         **C.**   **Unable to Seek Relief in Indiana While Her Jurisdictional Motion Is Pending, Ms. Mohan and Molina Seek Immediate Relief From this**

6              **Court, Where the Parties' Dispute Is Required to Be Adjudicated**

7         Elevance's refusal to agree to a date certain by when Ms. Mohan can begin her

8   position at Molina left her and Molina no choice but to file this action and move for a

9   temporary restraining order and preliminary injunction to prevent Elevance from

10   enforcing void and unlawful provisions in her employment agreements.  *See*

11   *generally*, Dkts. 1, 5.  Ms. Mohan, who is contesting jurisdiction in the Indiana

12   Action, could not seek such relief in that court without waiving her objections.  She is

13   also entitled to have this dispute heard by a California court, under California law.

14   *See* Cal. Lab. Code § 925.  Meanwhile, Ms. Mohan has not begun working for Molina

15   while she waits for relief from this Court.  *Id.*  Molina, which is not a party to the

16   Indiana Action, is also entitled to guidance and to vindicate its employee's right to

17   work as its head of Molina's Medicare line of business.

18         **D.**   **Elevance Files a Procedurally Improper "Emergency Motion" Without Meeting and Conferring or Providing *Ex Parte* Notice**

19

20         After the close of business on Friday, September 8, Elevance filed an

21   "Emergency Motion to Stay All Proceedings" in this action.  Dkt. 13.  Before filing,

22   Elevance did not meet and confer with Ms. Mohan or Molina about the motion—

23   either under Local Rule 7-3 for a noticed motion or under Local Rule 7-19.1 for an *ex*

24   *parte* application.  Nor did Elevance's motion for "emergency" relief comply with any

25   other procedural requirements for *ex parte* applications.  *See* L.R. 7-19.

26   **III.**   **APPLICABLE LEGAL STANDARDS**

27         **A.**   ***Ex Parte* Applications**

28         Requests for emergency relief like the stay Elevance requests here must be

1  sought through a properly noticed *ex parte* application under Local Rule 7.19.  "Ex

2  parte motions are rarely justified," except when "there is a temporal urgency such that

3  immediate and irreparable harm will occur if there is any delay in obtaining relief."

4  *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 490 (C.D.

5  Cal. 1995).  To justify *ex parte* relief, the moving party "must show that [its] cause

6  will be irreparably prejudiced if the underlying motion is heard according to regular

7  noticed motion procedures," and "that the moving party is without fault in creating the

8  crisis that requires ex parte relief, or that the crisis occurred as a result of excusable

9  neglect."  *Id*. at 492.  As set forth below, Elevance's motion does not address this

10  standard, so Elevance has necessarily failed to meet its burden.  The motion should be

11  denied on this basis alone.

12        **B.     Motions to Stay Proceedings**

13        The Court must exercise judgment and weigh competing interests when

14  determining whether it should exercise its discretionary authority to stay proceedings

15  before it.  *See Landis*, 299 U.S. at 254 ("Only in rare circumstances will a litigant in

16  one cause be compelled to stand aside while a litigant in another settles the rule of law

17  that will define the rights of both.").  The Ninth Circuit has identified three non-

18  exclusive factors that must be evaluated: (1) "the orderly course of justice measured in

19  terms of the simplifying or complicating of issues, proof, and questions of law the

20  possible damage which may result from the granting of a stay"; (2) "the possible

21  damage which may result from the granting of a stay"; and (3) "the hardship or

22  inequity which a party may suffer in being required to go forward."  *CMAX, Inc.*, 300

23  F.2d at 268.  "[I]f there is even a *fair possibility* that the stay will work damage to

24  [someone] else," the movant "must make out a *clear case of hardship or inequity* in

25  being required to go forward."  *Landis*, 299 U.S. at 255 (emphasis added).

26        Even if the Court were to entertain Elevance's procedurally improper motion on

27  an expedited basis (it need and should not), all three factors weigh heavily *against* a

28  stay of this action.  In addition to being procedurally improper, Elevance's Motion

OPPOSITION TO DEFENDANT'S EMERGENCY MOTION TO STAY

1    should be denied for lack of any merit.

2    **IV.   THE COURT SHOULD DENY ELEVANCE'S IMPROPER AND
      MERITLESS "EMERGENCY" MOTION TO STAY**

3

4         **A. Elevance's Motion Should Be Denied as a Procedurally Improper _Ex
              Parte_ Application**

5          Elevance's insertion of "Emergency" to the title of its motion is meaningless, as

6    there is _no such thing_ as an "Emergency Motion" recognized by this Court.  Rather,

7    the procedures available for requesting expedited relief are well-established:  if

8    Elevance has an urgent issue requiring immediate resolution by the Court (it does not)

9    Elevance could either:  (1) apply for an _ex parte_ order—in which case, Elevance must,

10   among other requirements, give advance notice to Plaintiffs of the substance of the

11   proposed _ex parte_ application (it did not), _see_ L.R. 7-19; or (2) file a motion for a

12   temporary restraining order or preliminary injunction—in which case, Elevance must

13   comply with the requirements set forth in Federal Rule of Civil Procedure 65 and

14   Local Rule 65-1 (it also did not), _see_ L.R. 7-9, 65-1, 77-1; _see also_ Fed. R. Civ. Proc.

15   65.

16         Despite being a sophisticated corporate entity with outside counsel, Elevance

17   has made no effort to follow the correct procedures to seek expedited relief.  It may

18   not sidestep these requirements and demand the Court's immediate attention simply

19   by adding "Emergency" to its motion.  Indeed, Elevance fails to identify _any_ authority

20   suggesting that the relief it seeks—stay of a civil action with a pending motion for a

21   TRO—is appropriate for adjudication on an expedited basis, and Plaintiffs are aware

22   of none.  Elevance's "Emergency Motion" is procedurally improper and the Court

23   should deny it on this basis alone.  _See_ "Ex Parte Applications," Procedures of Hon.

24   Andre Birotte Jr. ("Applications that fail to conform to Local Rule 7-19 and 7-19.1,

25   including a statement of opposing counsel's position, will not be considered.");

26   _Deville v. Specialized Loan Servicing, LLC_, No. EDCV 205576 JGB (Ex), 2020 WL

27   7121537, at *3 (C.D. Cal. Oct. 15, 2020) (Birotte, J.) (denying ex parte application to

28   stay action pending appeal in part because movant failed to address standard for ex

1    parte relief).

2    **B.    The Orderly Course of Justice Requires This Court to Proceed and a Rejection of Elevance's Requested Stay**

3

4    Elevance provides two purported rationales to demonstrate the benefits of a

5    stay.  Both must be rejected.  First, Elevance relies on the existence of a standstill

6    agreement that does not exist.  Elevance claims Ms. Mohan, through counsel, agreed

7    to stay sidelined from her job at Molina for an indefinite period, until her motion to

8    dismiss is ruled on in the Indiana Action.  There was no meeting of the minds as to

9    this agreement as Ms. Mohan would never have agreed to this.  Second, the first-to-

10   file doctrine does not apply here because this action involves different parties and

11   issues than the Indiana Action.  Elevance should also not be permitted to benefit from

12   its bad faith conduct in lulling Ms. Mohan and Molina into not filing suit in

13   California.  In fact, imposing a stay would upset the orderly resolution of this dispute

14   by allowing Elevance to obtain the relief it seeks by default, without having to make a

15   proper showing.

16   **1.    Elevance's Stay Argument Is Based on the Incorrect Premise that Ms. Mohan Has Agreed to an Indefinite Standstill in the Indiana Action**

17

18   Elevance's arguments are based on the mistaken premise that Ms. Mohan

19   agreed to a standstill with no concrete end date.  That is not true, and Elevance has

20   weaponized a misunderstanding between the parties.  As discussed above, Ms.

21   Mohan's counsel understood that the parties would negotiate the terms of the

22   standstill agreement as part of a written, private agreement between the parties.  When

23   counsel received a draft agreement from Elevance, it was quite clear that there had

24   been a significant misunderstanding, as Ms. Mohan was not willing to agree to a

25   standstill without any end date.[3]  Ms. Mohan attempted to negotiate a compromise to

26   _____

27   [3] Elevance's reliance on the doctrine of implied actual authority is misplaced because it requires that an agent, such as counsel here, have a reasonable belief that they are

28

10

1  avoid the need for judicial intervention, but Elevance flatly rejected those efforts and

2  sought to hold her to a never-ending standstill to which she never agreed.

3        This issue will be addressed by the Indiana court at an upcoming status

4  conference, where it is most appropriately addressed.  Elevance's attempt to have this

5  Court enforce a nonexistent standstill agreement from the Indiana Action is the

6  opposite of the orderly course of justice.

7              **2.    The First-to-File Doctrine Does Not Apply and Should Not
                      Apply Given Elevance's Bad Faith Tactics in Lulling Ms.
8                     Mohan and Molina into Not Filing Suit**

9        Elevance improperly seeks to capitalize on the fact that the Indiana Action was

10  first filed.  But the first-to-file doctrine does not apply here, where (1) the lawsuits do

11  not involve the same parties and are not about similar issues, and (2) the Indiana

12  Action was filed first as the result of Elevance's bad faith tactics—lulling Molina and

13  Ms. Mohan into believing there was no dispute so they would not seek to vindicate

14  their rights in a California court, while forum shopping to force Ms. Mohan to defend

15  herself in a venue more than a thousand miles away from her home, without

16  justification.

17        In deciding whether to exercise its discretion to stay an action under the first-to-

18  file rule, courts analyze three factors: (1) the sequence in which the actions were filed;

19  (2) similarity of the parties; and (3) similarity of the issues.  *See Alltrade, Inc. v.*

20  *Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (rule applies "when a

21  complaint involving the same parties and issues has already been filed in another

22  district.").

23        Here, the first-to-file rule does not apply because the actions do not involve the

24  same parties or similar issues.  Molina is not named as a party in the Indiana Action,

25  but is a party in this action.  Molina requires court action to declare the rights of the

26  parties so that Elevance cannot effectively bar Ms. Mohan from working at Molina

27  _____

28  authorized to enter into an agreement on behalf of their client.  Counsel had no such
   belief.  *See* Ta Decl., ¶ 6.

indefinitely.  Moreover, the cases are hardly the same.  The Indiana Action is a trade secrets misappropriation action; Elevance has brought seven causes of action[4] against Ms. Mohan based upon its allegation that Ms. Mohan "attempted to print" a PowerPoint presentation on the morning she gave notice of her resignation to Elevance.  Dkt. 13-3, ¶ 61, ¶¶ 81-143.  This action, by contrast, does not relate directly to Elevance's allegations of misappropriation.  Rather, Molina and Ms. Mohan seek broad declaratory and injunctive relief that the choice of law, forum selection, and restrictive covenant provisions in Ms. Mohan's employment agreements with Elevance are unenforceable, and that *all* claims regarding her employment with Elevance—including, but not limited to, allegations of trade secret misappropriation—must be adjudicated in California, applying California law.  Dkt. 1, p. 22 (Prayer for Relief).

While Ms. Mohan has raised these issues in the Indiana Action as part of her pending motion to dismiss due to lack of personal jurisdiction and improper forum, she has not sought declaratory relief there.  Indeed, given that Ms. Mohan is contesting jurisdiction in Indiana, she *cannot* seek affirmative relief in Indiana such as she is seeking in this Court without waiving those protections afforded to her by California law.  Similarly, Molina (which, as discussed, is not a party to the Indiana Action) has no means of obtaining relief except through this action.  Ms. Mohan and Molina cannot wait for relief until a ruling on the jurisdictional motion to dismiss— which has not been set for hearing yet—because Ms. Mohan was supposed to begin work on August 30, 2023.  Given Elevance's gamesmanship in waiting until the eve of Ms. Mohan's employment with Molina, and subsequent efforts to tie up Ms. Mohan from starting her job, Ms. Mohan and Molina need immediate relief in this

---

[4] The causes of action are (1) Breach of Contract, (2) Violation of the Indiana Uniform Trade Secrets Act, (3) Violation of the Defend Trade Secrets Act, (4) Breach of Fiduciary Duty, (5) Conversion, (6) Violation of the Computer Fraud and Abuse Act, and (7) Violation of Indiana's Computer Trespass Statute.  Dkt. 13-3, ¶ 61, ¶¶ 81-143.

Court, which (unlike the Indiana Court) does have jurisdiction over all the parties. The first-to-file rule should not apply.

In addition, this Court has discretion to refuse to apply the first-to-file rule where, as here, Elevance has in bad faith lulled both Ms. Mohan and Molina into not seeking judicial recourse until Elevance could file its own anticipatory litigation in its court of choice. "The Ninth Circuit has recognized that the first-to-file rule is not to be applied mechanically, and that bad faith, forum shopping, and anticipatory suits are among the exceptions to its application." *Prohbtd Media, Inc. v. VMR Prod., LLC*, No. LA CV 18-05593 JAK (SKx), 2018 WL 6012224, at *5 (C.D. Cal. Nov. 13, 2018) (citing *Alltrade*, 946 F.3d at 627-28); *see also Silvers v. Verbata*, No. 2:21-cv-05808-VAP-RAOx, 2021 WL 6882156 at *5-6 (C.D. Cal Oct. 8 2021) (denying defendants' motion to stay or to transfer based on the first to file rule, finding evidence of forum shopping because defendants had received an unfavorable judgment in Los Angeles). "Bad faith is evident when the plaintiff in the first action induces the other party to, in good faith, rely on representations made by the plaintiff that it will not file first in order to preempt the other party from filing a suit in its preferred forum." *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, No. CV 12-10763 MMM (JEMx), 2013 WL 12129650, at *6 (C.D. Cal. Apr. 19, 2013); *see also Jemella Grp. Ltd v. Living Proof Inc.*, No. CV 13-05740-BRO (FFMx), 2013 WL 12116392, at *6 (C.D. Cal. Dec. 23, 2013) (finding the first filed lawsuit was an improper "race to the courthouse" where the parties were engaged in active negotiation after defendant warned plaintiff it would sue if plaintiff refused to negotiate, and plaintiff unexpectedly sued defendant in a different state).

Ms. Mohan and Molina were transparent and above-board throughout her departure from Elevance. In particular, on July 17 they: advised Elevance that Ms. Mohan would start her new position at Molina on August 30; sent written notice to Elevance's Chief Legal Officer that Ms. Mohan was exercising her right under section 925 to void the Indiana choice-of-law and forum selection provisions in her

1  employment agreement; and asked that Elevance direct any issues regarding Ms.

2  Mohan's departure to Molina's legal counsel.  Following that correspondence,

3  Molina's counsel engaged in further communications with Elevance regarding the

4  return of documents that Ms. Mohan had in her home office.

5      At *no point*, for five weeks, did Elevance mention in its correspondence with

6  Molina or Ms. Mohan that it believed Ms. Mohan's voiding was ineffective.  Nor did

7  Elevance make the argument (which it makes now in the Indiana Action) that Ms.

8  Mohan's voiding was only effective as to one employment agreement, and not the

9  agreements Elevance attempts to enforce (which Elevance fails to disclose are

10  incorporated by reference into Ms. Mohan's voided employment agreement).  Indeed,

11  had Elevance raised these issues directly to Molina's legal counsel as requested, there

12  would be no Indiana Action: Elevance either would have realized from discussions

13  that its arguments are without merit, or Ms. Mohan and Molina would have filed this

14  action for a determination of the parties' rights regarding Ms. Mohan's imminent start

15  of employment at Molina.

16      Instead, Elevance failed to disclose its position on voiding, sitting in silence

17  until one week before Ms. Mohan's start date at Molina to file a lawsuit in its home

18  state of Indiana based on Indiana law. Elevance should not be permitted to engage in

19  such forum shopping and race to the courthouse in an attempt to eviscerate Ms.

20  Mohan's already-asserted rights under section 925.[5]

21      In short, if this Court were to find that the first-to-file doctrine applies—which

22  it should not, given that this action involves an additional party, different issues, and

23  the parties are seeking different relief—it should exercise its discretion and find that

24  _____

25  [5] Forum shopping occurs when a plaintiff chooses a forum in order "to win a tactical
advantage resulting from local laws that favor the plaintiff's case, the habitual
26  generosity of juries in the ... forum district, the plaintiff's popularity or the defendant's
unpopularity in the region, or the inconvenience and expense to the defendant
27  resulting from litigation in that forum." *Vivendi SA v. T-Mobile USA Inc.*, 586 F.3d
689, 695 (9th Cir. 2009) (internal quotation marks omitted).
28

1  the first-to-file rule does not apply given Elevance's bad faith tactics.

2       **3.   Denying Elevance's Stay Motion Would Further the Orderly
             Resolution of This Dispute By Determining the Applicable Law
3            and Forum**

4          Contrary to Elevance's argument, imposing a stay of this action would *upset* the

5  orderly resolution of this dispute by allowing Elevance to obtain the emergency

6  injunctive relief it seeks *by default*, without requiring it to make a proper showing.

7  Elevance has (a) deliberately and improperly filed its action in Indiana where it does

8  not belong since Ms. Mohan had already voided the forum selection clause, thereby

9  forcing Ms. Mohan to postpone her arguments on the merits lest she waive her

10 jurisdictional arguments; and (b) refused to agree to a date certain by which Ms.

11 Mohan can begin her new job with Molina, keeping her on the sidelines indefinitely.

12 Ms. Mohan filed this action to prevent Elevance from engaging in this impermissible

13 self-help.  Granting Elevance's motion to stay would pave the way for Elevance's bad

14 faith tactics.

15         By contrast, *denying* the requested stay would further the orderly resolution of

16 the parties' dispute by allowing this Court to first confirm whether Ms. Mohan's

17 exercise of her Labor Code section 925 rights in fact means that the Indiana choice-of-

18 law and forum selection clauses are excised from the agreement, that any dispute must

19 be litigated in California under California law, and that the restrictive covenants that

20 violate California law are not part of Ms. Mohan's employment agreement, as Ms.

21 Mohan and Molina contend in the pending action.  This Court is best-suited to

22 determine these issues of California law, and can and should do so on now an

23 expedited basis by deciding the (procedurally proper) *ex parte* application for a

24 temporary restraining order that Plaintiffs filed on September 7, 2023.  Dkt. 5.

25         Once the issues of applicable law and proper forum are decided, the claims

26 Elevance asserts can be adjudicated accordingly, so that the question of whether

27 Elevance is entitled to restrain Ms. Mohan from working for Molina can be

28 determined *on the merits* and not by default.

**C.    The Harm to Plaintiffs is Irreparable if This Case is Stayed, Whereas Elevance Fails to Demonstrate Any Hardship if Required to Go Forward**

Both the second *Landis* factor (possible damage from granting a stay) and third *Landis* factor (inequity if Elevance is required to go forward) also weigh decidedly against a stay.

As to the second *Landis* factor, Plaintiffs will be immediately and irreparably damaged if this case is stayed.  Plaintiffs would not have filed their TRO application if there were not an urgent need for relief.  Each day that Ms. Mohan is required to litigate Elevance's-improperly filed Indiana action severely prejudices both her ***and*** Molina.

Tellingly, Elevance does not even *attempt* to refute the damage that Molina will suffer if Ms. Mohan is required to remain on the sidelines indefinitely.  Molina's Medicare line of business currently employs approximately 1,800 individuals, and the group is tasked with overarching responsibilities to (i) ensure the regulatory compliance and day-to-day operations in existing Medicare plans offered by Molina; and (ii) execute on Molina's expansion of the Medicare segment's footprint.  *See* Dkt. 5-15, ¶ 5.  Seamless execution of these responsibilities is particularly critical now, as Medicare's open enrollment begins in October, and there are numerous imminent deadlines and deliverables for the Medicare business line that must be met in order to ensure a successful start in 2024.  *Id.*, ¶ 13.

Leaving Molina without a Senior Vice President—the executive 100% dedicated to and responsible for the oversight, management, growth, and development of the Medicare line of business—is unacceptable and severely prejudices Molina's Medicare program and offerings.  *Id.*, ¶ 14.  Each day where Ms. Mohan cannot step in and apply her deep Medicare expertise and leadership over this key pillar for the company undermines the Medicare growth strategy established by Molina and threatens its ability to continue delivering quality service to its existing Medicare plans.  *Id.*, ¶¶ 13–14; *see MySpace, Inc. v. Wallace*, 498 F. Supp. 2d 1293, 1305-06

(C.D. Cal. 2007) (finding plaintiff had "persuasively demonstrated irreparable harm" because "[h]arm to business goodwill and reputation is unquantifiable and considered irreparable"); *Roederer v. Treister*, 2 F. Supp. 3d 1153, 1161 (D. Or. 2014) (finding a threatened loss of prospective customers or goodwill supports irreparable harm) (citation omitted).

The harm to Ms. Mohan, who is the sole provider in her family, is also undeniable.  Contrary to Elevance's misrepresentations, Ms. Mohan *never* agreed to refrain from starting work at Molina indefinitely, nor did she waive her ability to pursue her rights under section 925 in her home state under California law while the improperly-filed Indiana action was pending.  Ms. Mohan should not be forced to face uncertainty about her future and defend herself from Elevance's baseless claims in Indiana court.  *See* Dkt. 5-1 ("Mohan Decl."), ¶ 28; *Lyon*, 2019 WL 1978802, at *8 (granting preliminary injunction enjoining Virginia-based company from pursuing litigation in Virginia against former employee, a California resident who worked from home, because plaintiff "will suffer irreparable harm by having to litigate this matter in Virginia absent preliminary relief . . . ."); *Philo v. Giftango, LLC*, No. 13 cv 0094 JML (BLM), 2013 WL 12097545, at *6 (S.D. Cal. Feb. 7, 2013) (granting preliminary injunction and finding irreparable harm where plaintiff would suffer the loss of ability to meet her family's needs).  Indeed, the Indiana Action—including Elevance's spurious allegations against Ms. Mohan—has already garnered media attention in an industry trade publication.  *Id.*  She is facing imminent and irreversible harm to her professional reputation while her start date with Molina hangs in limbo.  Mohan Decl., ¶ 28.

Finally, it would be inequitable *not* to require Elevance, who has acted in bad faith, to go forward here.  As opposed to Plaintiffs, whose livelihood and business operations depend on whether Elevance may enforce its illegal covenants against its former California employees who join Molina, Elevance is a large national company whose only stake is *not* being able to enforce the illegal provisions and thereby

1  damage the livelihood of its former employee and the business operations of a

2  competitor.

3      As detailed above, Elevance has been aware since Ms. Mohan's first

4  appearance in the Indiana Action on August 25 that she was not amenable to an

5  indefinite standstill, so its claims of being "misled" by her litigation position are

6  entirely unfounded.  Rather, it was *Elevance* who sought to mislead Molina and Ms.

7  Mohan by failing to respond to her July 17 voiding letter (despite engaging on other

8  issues), all the while planning to serve her with a lawsuit just days before her long-

9  planned start date at Molina.  Where Elevance has engaged in forum shopping by

10 failing to respond to Plaintiffs' voiding letter and rushing to court in Indiana in direct

11 violation of section 925 to circumvent California law, Elevance should not be

12 permitted to avoid a California court's consideration of Plaintiffs' claims.  Far from

13 demonstrating a clear case of hardship or inequity if required to go forward, *Landis*,

14 299 U.S. at 255, Elevance's bad faith conduct confirms Plaintiffs' need for a

15 temporary restraining order in a California court.

16 **V.    CONCLUSION**

17     For all the foregoing reasons, Plaintiffs respectfully request that Elevance's

18 improper "emergency motion" be denied.

19

20 DATED:  September 11, 2023          KING & SPALDING LLP

21

22                                    By */s/ Quyen L. Ta*
                                          QUYEN L. TA
23                                        JEANNE A. FUGATE
                                          LENNETTE W. LEE
24

25                                    Attorneys for Plaintiffs MOLINA
                                      HEALTHCARE, INC. and VINOD MOHAN
26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Civil L.R. 11-6.2, the undersigned counsel of record for Plaintiffs Molina Healthcare, Inc. and Vinod Mohan certifies that this brief contains 6,066 words, which complies with the word limit of L.R. 11-6.1.

DATED:  September 11, 2023          KING & SPALDING LLP


By   /s/ Quyen L. Ta
_____
     QUYEN L. TA
     JEANNE A. FUGATE
     LENNETTE W. LEE

Attorneys for MOLINA HEALTHCARE, INC. and VINOD MOHAN