JONATHAN M. WERNER (CA Bar No. 220011)
jwerner@fbtlaw.com
KEVIN A. DAY (CA Bar No. 222560)
kday@fbtlaw.com
FROST BROWN TODD LLP
1 MacArthur Place, Suite 200
Santa Ana, CA 92707
Tel: (714) 852-6800
Fax: (714) 852-6899

Attorneys for Defendant
ELEVANCE HEALTH, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLINA HEALTHCARE, INC., A CALIFORNIA CORPORATION; AND VINOD MOHAN, AN INDIVIDUAL,<br><br>Plaintiffs,<br><br>v.<br><br>ELEVANCE HEALTH, INC., AN INDIANA CORPORATION,<br><br>Defendant. | **CASE NO.:** 2:23-cv-07417<br><br>**JUDGE:** Hon. Andre Birotte, Jr.<br><br>**ELEVANCE HEALTH, INC.'S OPPOSITION TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>**ACTION FILED:** 9/7/2023 |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

Defendant Elevance Health, Inc. respectfully submits this Opposition to Order to Show Cause Re Preliminary Injunction:

///

///

///

# Table of Contents

I. FACTUAL BACKGROUND ..................................................................................1

    A. Elevance Health's Complaint Is Not Solely Based On The Choice Of Law, Venue Or Forum Selection Clause Materials Raised By Mohan..........................................................................................................2

    B. The District Court In Indiana Denied Elevance Health's Temporary Restraining Order, Thus Eliminating Any Urgency For Mohan..........................................................................................................4

    C. The Indiana District Court Denied Mohan's Motion To Dismiss For Lack Of Personal Jurisdiction ......................................................5

II. THE ENFORCEMENT OF THE EQUITY AGREEMENTS IN INDIANA IS NOT BARRED BY *LABOR CODE* §925 BECAUSE THEY WERE NOT REQUIRED AS A CONDITION OF HER EMPLOYMENT ..................................................................................................5

III. AN INJUNCTION SHOULD NOT BE GRANTED DUE TO THE REDUCED SCOPE OF THE CLAIMS IN THE INDIANA LAWSUIT AND THE FIRST TO FILE DOCTRINE.......................................................8

    A. Mohan/Molina Are Not Likely To Succeed On The Merits Of Their Claims Following The Paring Down Of The Indiana Lawsuit ...9

        1. The Chronology of the Cases And The Indiana District Court's Rulings On Merits Issues Favor Application of the First-To-File Rule ..................................................................10

        2. The Similarity Of The Parties......................................................10

        3. The Issues Are Identical ...............................................................11

    B. There Is No Irreparable Harm To Mohan Or Molina ..........................11

    C. The Balance Of Harms And Public Interest Weighs In Favor Of Elevance Health ..............................................................................12

IV. MOHAN AND MOLINA'S APPLICATION DID NOT PROVIDE THE REQUIRED SECURITY BOND AND SHOULD BE DENIED.................13

V. CONCLUSION ....................................................................................................14

FROST BROWN TODD LLP
SANTA ANA

# Table of Authorities

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
 632 F.3d 1127, 1131 (9th Cir. 2011) .................................................................... 8

*Am. Trucking Ass'ns v. City of L.A.*,
 559 F.3d 1046, 1052 (9th Cir. 2009) .................................................................... 8

*Bergh v. State of Wash.*,
 535 F.2d 505, 507 (9th Cir. 1976) ........................................................................ 9

*Cordero v. C.R. England, Inc.*,
 2021 WL 2793929, *2 (Apr. 30, 2021) ................................................................ 6

*Goldie's Bookstore v. Superior Court of the State of California*,
 739 F.2d 466, 471 (9th Cir.1984) ....................................................................... 12

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
 544 F.Supp.2d 949, 959 (N.D. Cal.2008) .......................................................... 11

*Johnson v. Couturier*,
 572 F.3d 1067, 1086 (9th Cir. 2009) .................................................................. 13

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1, 10 (1972) ........................................................................................... 7

*Montoya v. Ariba Inc.*,
 2023 WL 2368701, *8 (C.D. Cal. Mar. 6, 2023) .................................................. 7

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
 678 F.2d 93, 94-95 (9th Cir. 1982) ...................................................................... 9

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.*,
 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) ..................................................... 12

*Rocca LaCivita vs. ADP, Inc* ...................................................................................... 6

*Romero v. Watkins & Shepard Trucking, Inc.*,
 2020 WL 5775180, *3 (C.D. Cal. July 10, 2020) ................................................ 6

*Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*,
 240 F.3d 832, 839 n.7 (9th Cir. 2001) ................................................................. 8

*The Am Hospital Ass'n v. The Dep't of Health and Human Services*,
 2020 WL 11192550 (N.D. Cal. Dec. 28, 2020. .................................................. 12

*Tricom Research, Inc. v. Tactical Support Equipment, Inc.*,
 No. CV 082130, 2008n WL 11338513, *1 (C.D. Cal. June 27, 2008) ............... 10

*U.S. Philips Corp. v. KBC Bank N.V.*,
 590 F.3d 1091, 1094 (9th Cir. 2010) .................................................................... 8

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7, 20 (2008) .......................................................................................... 8

*Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*,
   42 F. Supp. 3d 1377, 1381 (S.D. Cal. 2014) ................................................ 10, 11

**Statutes**

18 U.S.C. § 1030 ........................................................................................................ 2

18 U.S.C. § 1836 ........................................................................................................ 2

**Other Authorities**

California Labor Code § 925 ....................................................... 2, 4, 5, 6, 7, 8, 12

**Rules**

Fed. R. Civ. P. 65 (c) .............................................................................................. 13

Fed. R. Civ. P. 65(a)-(b) ........................................................................................... 8

I. **FACTUAL BACKGROUND**

This Court issued its Order Denying Emergency Motion for Stay, Granting Application for Temporary Restraining Order and Entering Temporary Restraining Order ("Order") on September 15th. [Dkt No. 22.] This Order granted Mohan and Molina's Motion for Temporary Restraining Order and Preliminary Injunction filed on September 7, 2023, contemporaneous with their Complaint. [Dkt. Nos. 1 and 5.] These proceedings shall be referred to herein as the "California Lawsuit". Specifically, the Order enjoined Elevance Health from seeking to enforce forum selection, choice-of-law, non-competition provisions and customer non-solicitation provisions in the ongoing litigation in Indiana. Distilled to its essence, the Order addresses the perceived impact of *Labor Code* § 925 on Elevance Health's first filed case in Indiana.

The California Lawsuit was filed *after* Mohan herself filed a Motion to Dismiss for lack of personal jurisdiction and improper venue in a case filed by Elevance Health against her in Indiana[1], referred to herein as the "Indiana Lawsuit". Specifically, Elevance Health's Complaint and Motion for Temporary Restraining Order in the Indiana Lawsuit were filed on August 22nd and Mohan's Motion to Dismiss was filed on August 30th. [See, Complaint, Request for Judicial Notice ("RJN"), Exhibit "A".]

The District Court in the Indiana Lawsuit ruled on both Mohan's Motion to Dismiss and Elevance Health's Motion for Temporary Restraining Order within an hour of this Court's ruling issuing the Order. The Indiana Court denied both Elevance Health's Motion for Temporary Restraining Order and Mohan's Motion to Dismiss, issuing a comprehensive ruling. [RJN, Ex. "B".] As detailed below, Mohan's choice to proceed on the merits and the ruling in the first filed Indiana Lawsuit, coupled with Elevance Health's agreement to excise claims that could be interpreted as running

---

[1] *Elevance Health, Inc. v. Vinod Mohan,* United States District Court, Southern District of Indiana, Indianapolis Division (Case No. 1:23-cv-01497-SEB-MJD).

1
**ELEVANCE HEALTH, INC.'S OPPOSITION TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

aforementioned of this Court's Order, have respectfully eliminated the need for a permanent injunction here.

### A. Elevance Health's Complaint Is Not Solely Based On The Choice Of Law, Venue Or Forum Selection Clause Materials Raised By Mohan

Elevance Health's Complaint in the Indiana Lawsuit contains seven claims related to confidential information, protected by contract, none of which seek to stop Mohan from working for Molina. Contrary to Mohan and Molina's Application, Elevance Health does not seek to enforce any non-competition or customer non-solicitation covenants against Mohan. Instead, the entire Complaint is focused on protecting Elevance Health's specific trade secrets from being used by Mohan while working for Molina. Notably, the Complaint in the Indiana Lawsuit delineates the Indiana Court's subject matter jurisdiction over these issues under the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. [RJN, Ex. "A", ¶6.] There are five supplemental claims pled based on Indiana state law, but with the exception of one supplemental claim (Count I), Elevance Health will agree to dismiss Counts II, IV, V and VII and solely proceed on the claims tied to violations of the federal statutes, along with a related breach of contract claim that falls outside of the ambit of *California Labor Code* § 925.

The two federal claims, Counts III and VI, are based on contractual provisions agreed to by Mohan related to the protection of confidential information in both her Employment Agreement and a series of yearly Equity Agreements. [RJN, Ex. "A", ¶¶ 37-47.] The claims arising out of the latter agreements should not be impacted by *Labor Code* §925. Count I, for breach of the yearly Equity Agreements, is not based upon Mohan's Employment Agreement – the contract upon which Mohan/Molina's Motion for Temporary Restraining Order and Preliminary Injunction was based. Indeed, Mohan/Molina attempt to lump all of the contracts into one overbroad "Employment Agreement" in the California Lawsuit, but the Indiana lawsuit is not constructed in that all-inclusive manner.

In Indiana, Counts III and VI are based upon federal statutes potentially violated by Mohan's retention of specific trade secret materials tied to the Annual Election Period, also known as "open enrollment", when Medicare Advantage organizations engage in a competitive bidding process to sell their products and services to companies throughout the country. [RJN, Ex. "A", ¶¶ 26-27.]

Count I, linked to Counts III and IV, addresses the same violation, but is tied to a voluntary Incentive Compensation Plan at Elevance Health wherein Mohan entered into annual Equity Agreements and received stock options and grants. [RJN, Ex. "A", ¶¶ 40-44.] Mohan and Elevance Health entered into twelve such equity agreements from 2020 through 2023, with each agreement detailing both what constituted confidential information and how such information had to be handled:

> "[Confidential Information includes] plans, designs, concepts, computer programs, formulae, and equations; product fulfillment and supplier information; customer and supplier lists, and confidential business practices of the Company, its affiliates and any of its customers, vendors, business partners or suppliers; profit margins and the prices and discounts the Company obtains or has obtained or at which it sells or has sold or plans to sell its products or services (except for public pricing lists); manufacturing, assembling, labor and sales plans and costs; <u>business and marketing plans, ideas, or strategies; confidential financial performance and projections</u>; employee compensation; employee staffing and recruiting plans and employee personal information; and other confidential concepts and ideas related to the Company's business." [RJN, Ex. "A", ¶ 45, citing to Exs. 6-9 and § 7(a), emphasis added.]

Mohan agreed she would not:

> "(A) use Confidential Information for the benefit of any person or entity other than the Company or its affiliates; (B) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information, except as required to perform the Participant's duties for the Company or its affiliates; or (C) while employed and thereafter, publish,

> release, disclose or deliver or otherwise make available to any third party any Confidential Information by any communication, including oral, documentary, electronic or magnetic information transmittal device or media." [*Id.*, emphasis added.]

As a condition of receiving stock options or grants from Elevance Health, Mohan agreed to maintain the secrecy of Elevance Health's confidential information and trade secrets. A breach of the equity agreements allows Elevance Health to recover the value of the stock options or grants from Mohan. The Equity Agreements are properly before the Indiana District Court per Section 21.11 of the same and based upon diversity jurisdiction.[2]

Thus, Claims I, III and VI in the Indiana Lawsuit are not advanced to stop Mohan from working for Molina, but rather to recover the damages specifically allowed under the incentive compensation plan. Admittedly, some portions of the mechanism to stop the immediate use of Elevance Health's "Confidential Information" by Mohan at Molina in the Indiana Lawsuit tangentially appeared to run afoul of *Labor Code* §925, but the requested injunctive relief was only intended to stop the use of the specific information and may have initially cast too broad of a net. Elevance Health is categorically not seeking to enforce a non-compete or customer non-solicitation provision against Mohan. As discussed below, Elevance Health is also prepared to dismiss Counts II, IV, V and VII in the Indiana Lawsuit to address this Court's concerns about the interplay with *Labor Code* §925.

**B.     The District Court In Indiana Denied Elevance Health's Temporary Restraining Order, Thus Eliminating Any Urgency For Mohan**

Specifically related to this Court's concerns in its Order, the District Court in the Indiana Lawsuit denied Elevance Health's requested TRO. [RJN, Ex. "B", p. 14.] The District Court undertook a careful analysis of the potential for ongoing and

---

[2] As discussed in detail below, the Equity Agreements are not subject to the reach of *Labor Code* § 925 and the forum selection clauses in Indiana federal court within are binding.

imminent harm to Elevance Health based upon the defined information at issue and found that direct cause is lacking without further discovery. [*Id*.]  As a result, the TRO and injunctive relief sought at the outset was denied.

This now sets up the Indiana Lawsuit to be framed consistent with the discussion herein, focused on the use of the confidential and trade secret information and damages that flow from the incentive agreements.  Should discovery reveal additional facts, Elevance Health will not seek to enjoin Mohan's employment with Molina, but rather would advance a very segmented request to enjoin use of the specific information at issue.  The denial also eliminates any supposed irreparable harm to Mohan or Molina in this case because Mohan can, and likely already has, begun her employment.

### C. The Indiana District Court Denied Mohan's Motion To Dismiss For Lack Of Personal Jurisdiction

The District Court also denied Mohan's Motion to Dismiss pursuant to *Federal Rule of Civil Procedure* 12(b)(2) and Motion to Transfer based upon Rule 12(b)(3). [RJN, Ex. "B", pp. 8-13.]  Thus, Mohan litigated key issues on the merits in the Indiana Lawsuit, the first filed jurisdiction.  Accordingly, the "first to file" rule should apply, in conjunction with Elevance Health's agreement to pare the Indiana Lawsuit down to the federal claims and the breach of the Equity Agreements.  The former are unaffected by § 925 and the latter is outside of the statute's ambit as discussed below.

### II. THE ENFORCEMENT OF THE EQUITY AGREEMENTS IN INDIANA IS NOT BARRED BY *LABOR CODE* §925 BECAUSE THEY WERE NOT REQUIRED AS A CONDITION OF HER EMPLOYMENT

The main argument made by Mohan/Molina related to the injunction request is that *Labor Code* § 925 bars forum selection, choice of law and non-competition claims for California employees when litigating in other states.  This proposition is generally correct, but the sole remaining agreements at issue in the Indiana case, the

Equity Agreements[3], are not subject to § 925 because they were not entered into as a required a condition of employment.

Therefore, even if California law were to somehow apply (despite the choice of law provisions in the Equity Agreements), *Labor Code* § 925 does not apply to them because Mohan did not sign any of the agreements as a condition of her employment with Elevance Health. The participation in the Equity Agreements was a voluntary choice. [RJN, Ex. "A", Ex. 4, p. 1.] Mohan's decision either to accept or reject the Equity Agreements would have had no impact whatsoever on her employment at Elevance Health. *See Romero v. Watkins & Shepard Trucking, Inc.*, 2020 WL 5775180, *3 (C.D. Cal. July 10, 2020) ("Romero I") (holding that an agreement is not a condition of employment where employee can refuse agreement and maintain employment); *Cordero v. C.R. England, Inc.*, 2021 WL 2793929, *2 (Apr. 30, 2021) (holding forum selection clause that could have been rejected was not a condition of employment).

In a recent, similar case involving a New Jersey forum selection clause and choice of law provision contained in an employee's stock option agreement, a California district court considered and rejected the employee's claim that these provisions were void under *Labor Code* § 925. In *Rocca LaCivita vs. ADP, Inc*[4]., the procedural circumstances are analogous as an employee worked for ADP and received stock options during employment. [*LaCivita,* Docket No. 11, pp. 9-11.] The employee left to work for a competitor, potentially using confidential information in that new role. [*Id.*] ADP filed a Complaint in United States District Court in New Jersey to recover damages for breach of the stock option agreements and then the employee (LaCivita) filed a lawsuit and application for temporary restraining order in California seeking to enjoin the New Jersey litigation using *Labor Code* § 925.

---

[3] The two federal statutes at issue will provide the applicable substantive law for their two respective claims, with the breach of contract claim decided under Indiana law.

[4] Central District of California, Case No. 8:21-cv-02071-JVS-ADS, ADP.

6
**ELEVANCE HEALTH, INC.'S OPPOSITION TO ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

The District Court denied the former employee's application for a temporary restraining order holding, "LaCivita is not likely to succeed on the merits of his declaratory relief claims against Defendant ADP, Inc. ("ADP") regarding the enforceability on the choice of law and venue clause in the 2020 Restrictive Covenant Agreement. This Case is likely subject to the 'first to file' rule, and this the case is likely to be dismissed or transferred…." [*LaCivita*, Docket No. 12.] ADP's argument in California was identical to Elevance Health – the stock option agreements were beyond the scope of *Labor Code* § 925. [*Id.*] The District Court's Order denying a temporary restraining order, relying on the first to file doctrine respectfully provides a road map here.

In March 2023, a California District Court evaluated whether a "voluntary incentive plan renewed on a yearly basis" was a condition of employment pursuant to § 925. *Montoya v. Ariba Inc.*, 2023 WL 2368701, *8 (C.D. Cal. Mar. 6, 2023). The court found it was not, noting: "If eligible sales people want to earn incentive compensation under the GIP, they must sign and acknowledge it each year and agree to be bound by its terms, though SAP does not require sales people to sign the plan as a condition of continued employment." *Id*. The *Montoya* court also found that the plaintiff's statement that he " 'was told he had to sign' the GIP does not sufficiently address the crucial point raised by Defendants - that agreeing to the GIP is *not* a condition of continued employment." *Id*.

Likewise, the Equity Agreements are offered periodically to certain employees based upon merit and the employees do not have to accept the stock award or the terms of the agreements. Thus, these are not a condition of employment and *Labor Code* § 925 expressly states that it only applies only to agreements executed "as a condition of employment." Because the Equity Agreements are not subject to § 925, the general rule that the forum selection clauses are enforceable applies here. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the

resisting party to be 'unreasonable' under the circumstances.").

As a result, a preliminary injunction is not required here because the remaining claims in the Indiana Lawsuit will be adjusted to solely focus on the theft of trade secrets and the breach of the Equity Agreements. The remaining claims do not impinge upon *Labor Code* § 925 and the first to file doctrine should allow the Indiana Lawsuit to proceed to completion.

### III. AN INJUNCTION SHOULD NOT BE GRANTED DUE TO THE REDUCED SCOPE OF THE CLAIMS IN THE INDIANA LAWSUIT AND THE FIRST TO FILE DOCTRINE

Rule 65 of the *Federal Rules of Civil Procedure* provides courts with the authority to issue temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65(a)-(b). The purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered. *See U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010). The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).

An injunction is an equitable remedy, therefore the court may apply a sliding test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Here, the elements for injunctive relief are not met and Mohan/Molina request for a preliminary injunction should fail.

### A.     Mohan/Molina Are Not Likely To Succeed On The Merits Of Their Claims Following The Paring Down Of The Indiana Lawsuit

The Complaint filed by Mohan and Molina seeks declaratory relief to prevent specific claims from being litigated related to her "employment agreement". [Dkt, No. 1, Complaint, p. 7.] Contrary to Elevance Health's Complaint in the Indiana Lawsuit which separates out the claims arising out of the Equity Agreements and the Employment Agreement, the California Lawsuit lumps the totality of the agreements together. This is inconsistent with the actual language and intent of the separate documents as participation in the incentive plan and Equity Agreements were clearly voluntary and separate from her Employment Agreement. [RJN, Exhibit "A", Ex. 5, §1.2.]

Accordingly, the first to file rule should apply, allowing this Court to decline jurisdiction (with Elevance Health's agreement to focus only on claims arising under federal law and the Equity Agreements). The rule permits a court to decline jurisdiction over a matter involving the same parties and issues as a previously filed matter in another district. *Pacesetter Sys., Inc. v. Medtronic, Inc*., 678 F.2d 93, 94-95 (9th Cir. 1982). Pursuant to the first to file rule, "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit." *Id*. at 95. Where an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and an injunction should be granted only in the most unusual cases. *Bergh v. State of Wash*., 535 F.2d 505, 507 (9th Cir. 1976).

"Normally sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the suit and no purpose would be served by proceeding with a second action…." *Pacesetter*, 678 F.2d at 95.

Courts analyze three factors in determining whether to apply the first-to-file rule: (1) chronology of the actions; (2) similarity of the parties; and (3) similarity of

the issues." *Youngevity Int'l, Inc. v. Renew Life Formulas, Inc.*, 42 F. Supp. 3d 1377, 1381 (S.D. Cal. 2014). "The Court may, in its discretion, decline to apply the rule, regardless of applicability, if it finds that 'equitable concerns militate against application of the rule.'" *Tricom Research, Inc. v. Tactical Support Equipment, Inc.*, No. CV 082130, 2008n WL 11338513, *1 (C.D. Cal. June 27, 2008). Respectfully, the equitable concerns that may have existed prior to the agreement to eliminate the four potentially impacted counts in the Indiana lawsuit have now been ameliorated, bolstering the applicable of the first to file rule.

### 1. The Chronology of the Cases And The Indiana District Court's Rulings On Merits Issues Favor Application of the First-To-File Rule

The first factor California courts consider when determining the applicability of the first-to-file rule is the chronology of the actions. It is undisputed that the Indiana Lawsuit was filed first, on August 22, 2023, sixteen days before this case was filed on September 7, 2023. More important though is the fact that the Indiana District Court has already ruled on substantive motions, both procedural (finding personal jurisdiction over Mohan) and merits-based (denying injunctive relief based upon the facts presented). Additionally, the issue of whether California law acts to bar enforcement of the Equity Agreements can be fully briefed and adjudicated in the Indiana Lawsuit.

Accordingly, the first factor of the first-to-file rule is satisfied and should weigh in favor of the denial of the requested injunction and likely dismissal of this case. *Youngevity*, 42 F. Supp. 3d at 1382 (finding first factor satisfied where first-filed action "was filed a month before the Complaint in the instant action was filed").

### 2. The Similarity Of The Parties

The second factor California courts consider, the similarity of the involved parties, is also satisfied and weighs in favor of dismissal of this action. "[T]he first-to-file rule does not require strict identity of the parties, but rather substantial similarity."

*Youngevity*, 42 F. Supp. 3d at 1382. Mohan and Elevance Health are parties in both cases, and the presence of Molina in the California Lawsuit is not determinative on the issue. The elimination of the requested injunction to stop Mohan from beginning her employment at Molina has now rendered Molina's presence as surplusage in this dispute, as it now relates to breaches of agreements between Mohan and Elevance Health alone.

### 3. The Issues Are Identical

The final factor California courts consider is whether both actions involve similar issues. "[T]he issues in two actions need not be identical." Adoma, 711 F. Supp. 2d at 1148 (citations omitted). "Rather, the issues need only be 'substantially similar.'" *Id.*; *see also Youngevity*, 42 F. Supp. 3d at 1383 (S.D. Cal. 2014) ("The first-to-file rule does not require strict identity of issues or 'exact parallelism,' but rather requires substantial similarity or overlap of the claims and issues."). Even if there are limited distinctions among the issues asserted, California courts regularly find sufficient similarity where the essence of the issues are identical. *See, Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.,* 544 F.Supp.2d 949, 959 (N.D. Cal.2008) (finding sufficient similarity where plaintiff in later-filed case raised additional claims under California law).

Here, the California Lawsuit is essentially a reactionary defensive filing to the Indiana case, addressing identical issues. Thus, the issues are not only substantially similar, they are mirror images of each other. This factor weighs in Elevance Health's favor as well.

### B. There Is No Irreparable Harm To Mohan Or Molina

Mohan and Molina claim two types of "irreparable harm": (1) reputational damage to Mohan and (2) loss of work product and business generation at Molina. Neither carries the day here.

Taking the issues in reverse order, Mohan has not been enjoined from working at Molina following the Indiana District Court's denial of the requested TRO and this

Court's Order granting the § 925 TRO at issue in this Opposition. Elevance Health's commitment to proceed on damages claims solely related to the trade secrets and Equity Agreements negates any irreparable harm to Molina.

Mohan's claim of reputational damage also falls short. "An irreparable harm is one that cannot be redressed by a legal or equitable remedy following trial." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) The trade secret and Equity Agreement issues have obviously not prevented Mohan from obtaining new employment with Molina. Any other claimed damages are more likely than not quantifiable damages which do not constitute irreparable harm because the harm can be remedied by a damage award. *See Premier Nutrition, Inc.*, 475 F. Supp. 2d at 1007; *Goldie's Bookstore v. Superior Court of the State of California*, 739 F.2d 466, 471 (9th Cir.1984) ("Mere financial injury does not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation.").

Moreover, if Mohan is subject to damages in the Indiana Lawsuit, those damages likewise cut against an injunction because "self-inflicted wounds are not irreparable injury." *The Am Hospital Ass'n v. The Dep't of Health and Human Services*, 2020 WL 11192550 (N.D. Cal. Dec. 28, 2020.

C. **The Balance Of Harms And Public Interest Weighs In Favor Of Elevance Health**

The balance of harms weighs in favor of not enjoining Elevance Health from proceeding to protect its trade secrets in the Indiana Lawsuit. The elements this Court considered problematic in ruling on the temporary restraining order have been excised, shrinking the case down to address financial losses suffered by Elevance Health related to the alleged improper use of its confidential information. There is literally nothing left to "balance" for Mohan and Molina. Molina is currently outside of the scope of the Indiana Lawsuit and Mohan is assumed to have started her employment there, taking a major perceived issue off of the table. If Mohan used confidential information in contravention of the Equity Agreements, that proverbial

die is already cast and the Indiana Lawsuit will proceed into the discovery phase.

On the contrary, enjoining Elevance Health from protecting its confidential information in the first filed Indiana Lawsuit will harm the company. The District Court in Indiana has a distinct interest in handling litigation for a major healthcare company headquartered in the state and is proceeding down that path. With the prophylactic measures now agreed to by Elevance Health, this final factor should result in the denial of the requested injunctive relief.

## IV. MOHAN AND MOLINA'S APPLICATION DID NOT PROVIDE THE REQUIRED SECURITY BOND AND SHOULD BE DENIED

Elevance Health respectfully does not agree that the elements of a permanent injunction have been met or are even applicable in this case. However, should the Court entertain the requested relief, Fed. R. Civ. P. 65 (c) expressly states that a court may only issue a temporary restraining order as well as a preliminary injunction "if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, Mohan and Molina's Application completely fails to address this required component. The Application should be denied as a result.

If the Application is not denied, the amount of the bond is set at the court's discretion to address the harm to the defendant, which here *starts* at approximately $600,000, the value of the stock options obtained by Mohan that Elevance Health is attempting to recover in Indiana. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). If the trade secrets claims expand based upon information gleaned in discovery in Indiana, the amount of the bond will correspondingly rise.

///

///

///

## V. CONCLUSION

Based upon the foregoing, Mohan and Molina cannot meet the elements for a preliminary injunction and this Application should be denied.

Respectfully submitted,

DATED: September 20, 2023  FROST BROWN TODD LLP

By: /s/ Kevin A. Day
JONATHAN M. WERNER
KEVIN A. DAY
Attorneys for Defendant
ELEVANCE HEALTH, INC.